# W. B. STONE v. KANSAS CITY AND WESTPORT BELT RAILWAY COMPANY, Appellant.

Division Two, July 14, 1914.

1. COMMON SOURCE OF TITLE: Possession Under Erroneous Description. It is not necessary, to constitute a common source of title, that both parties should have a good title from the common source. That would be impossible. All that is necessary is that both parties claim under the common source. So where one of defendant's predecessors in title took possession of a right of way under a deed from the owner of the land under whom plaintiff claims, which deed misdescribed one of the lots over which the grant was made, that makes a common source of title which cannot be impeached by defendant except by showing a title superior to that of the common source.

2. **QUIETING TITLE: Evidence: Deed: Made by Order of Court.** In a suit to quiet title a joint deed to the property in dispute made by the owner's assignee in bankruptcy and by a substituted trustee under a deed of trust, was properly admitted in evidence, over an objection that the power of the makers was not shown, where the deed recites that the land was sold under an order of the court in bankruptcy and under the provisions of the deed of trust.

3. **DEED OF TRUST: Substitute Trustee: Sheriff: Ex parte Appointment.** The fact that the court's appointment of the sheriff as substituted trustee to sell land was made on an *ex parte* application of the beneficiary in the deed of trust, does not render the appointment invalid.

4. **VENDOR AND PURCHASER: Real Estate: In Possession of Third Party.** He who buys property in the open and visible possession of a third person is chargeable with notice of the title and right of that person in the premises.

5. ———**: Foreclosure Deed not Recorded: Purchase of Equity of Redemption.** A recorded deed of trust is constructive notice that the legal title is outstanding in the trustee, and one who, without notice of the foreclosure of the deed of trust, purchases the equity of redemption ten years after the foreclosure but before the recording of the foreclosure deed, is not entitled, in a suit to quiet title, to have the foreclosure deed declared void, although meanwhile he has completed and operated a railroad upon the land in question.

6. ———**: Adverse Possession: Evidence.** Evidence *held* insufficient to establish title in defendant by adverse possession.

7. **ACTIONS: Parties: Bound by Prior Adjudication.** As regards the subject-matter, parties to a prior suit and their privies are concluded, in a second suit, as to all matters which were or might have been submitted to the court for its consideration on the issues in the first case.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

AFFIRMED.

*John H. Lucas* and *Halbert H. McCluer* for appellant.

(1) The court erred in not declaring as a matter of law that respondent was not entitled to recover.

(a)   There was no showing that the United States had ever parted with its title to the land.   Sec. 4 of the 5th Clause, Act of Admission, Stats. 1909, p. 38; Sec. 6316, R. S. 1909; Stephenson v. Stephenson, 71 Mo. 127.   (b) The trust deed from Campbell to Swearingen did not sufficiently describe the land.   (c) The trustee's deed under the above deed did not sufficiently describe the land.   (d) The sale by substitute trustee and assignee in bankruptcy was not shown to have been made with authority and was hence invalid.   In re Snedaker, 3 B. R. 155; In re People's Mail Steamship Co., 2 B. R. 170; Davis v. Carpenter, 2 B. R. 125; Jones v. Leach et al., 1 B. R. 165; In re Vogel, 2 B. R. 138; Lee v. Franklin, 3 B. R. 53; In re Rosenberg, 3 B. R. 33; In re High, 3 B. R. 46.   (e) In the absence of an agreement to the contrary the taking of the land for the purpose of a right of way was an appropriation of a right of way of the usual width, being the amount allowed by law.   Hargis v. Railroad, 100 Mo. 210; Campbell v. Railroad, 110 Ind. 490; Railroad v. Cochrane, 3 Lea (Tenn.), 478; Railroad v. McReynolds, 48 S. W. (Tenn.) 253.   (2)   Adverse user gave the appellant a prescriptive right and the court erred in not so deciding.   Boyce v. Railroad, 168 Mo. 583; Railroad v. Michener, 117 Ind. 462; Prather v. Telegraph Co., 89 Ind. 501; Schultz v. Lindell, 30 Mo. 310; Johnson v. Prewett, 32 Mo. 553; Powell v. Davis, 54 Mo. 315; Callahan v. Davis, 103 Mo. 444; Ragan v. Railroad, 144 Mo. 636.   (3)   The Perkins suit was not an adjudication of this matter, and the conversation about same cannot aid respondent.   Stumpe v. Kopp, 201 Mo. 423; Lemmons v. McKinley, 162 Mo. 530.   (4)   Respondent was precluded from a recovery by failure to record the deed to Perkins until long after purchase and improvement by appellant's grantor.   (5)   Appellant's rights have not been lost by abandonment.   Railroad v. Railroad, 129 Mo. 62; 1 Am. & Eng. Ency. Law, p. 1; Scarritt v. Railroad, 148 Mo. 683; Constitution, art. 12, sec.

14; State v. Railroad, ·239 Mo. 234. (6) The court erred in admitting each of the following items of evidence. (a) Deed from substitute trustee and assignee in bankruptcy. (b) Appointment of substitute trustee. (c) Evidence about claims made in the Ragan case. (d) Evidence as to claim in the Ragan case and instruction asked in that case, and in not striking out that evidence. (e) Refusing to strike out exhibits 6, 15 and 18, and each of them as requested by appellant. (f) Exhibit 41, being the amended petition in the Ragan case and exhibit 42 being disclaimer. (g) Petition, summons and judgment in the suit of Perkins v. Appellant et al. (h) Evidence of N. F. Heitman about what was said in settlement of the Perkins case.

*McCune, Harding, Brown & Murphy* and *Spencer F. Harris* for respondent.

(1) The description in the deed of trust from Campbell to Swearingen is sufficient. Loyd v. Oates, 143 Ala. 433; McAllister v. Honea, 71 Miss. 259; Waugh v. Richardson, 30 N. C. 470; Henry v. Whitaker, 82 Tex. 5; Cornwell v. Thurston, 59 Mo. 156; Frank v. Meyer, 97 Ala. 437; Rainwater v. Stevens, 15 Mo. App. 544. (2) The description in the trustee's deed is good. (3) The sale by trustee and assignee in bankruptcy is good. The law presumes the necessary orders were procured. Rockwell v. Brown, 54 N. Y. 210; Ivy v. Yancey, 129 Mo. 509. (4) There is no presumption in the absence of a license to enter, that the railroad occupied a right of way to the full extent allowed by law. Railroad v. Rickards, 38 Neb. 847. (5) The original right of way, if any was ever obtained, was never occupied and was abandoned long prior to 1887. Roanoke v. Railroad, 108 Mo. 50. (6) There was not sufficient showing of adverse possession to vest title in appellant. Jones on Easements, sec. 857; Herbert v. Merrifield, 133 Mo. 270; Elliott on Railroads (2 Ed.), sec.

948; Railroad v. Galt, 133 Ill. 670. (7) The deed from the Cases to Kansas City, Memphis & Mobile Ry. Co., being foreclosed, was not color of title when possession was taken in 1887. Jones on Easements, sec. 857; Wier v. Marsh, 21 Tex. 97; Choateau v. Riddle, 110 Mo. 366; Snyder v. Railroad, 112 Mo. 540. (8) The Case deed cannot constitute color of title as possession was not taken by the first taker under such deed. Norfleet v. Hutchings, 68 Mo. 598. (9) Where holder of legal title is in possession of whole tract, and claimant under color of title deed enters, such claimant can only acquire title by adverse possession to part actually occupied. Ozark Plateau v. Hayes, 105 Mo. 151; Bradley v. West, 60 Mo. 40; Leefer v. Baker, 68 Mo. 450; Lynde v. Williams, 68 Mo. 369. (10) Right of way deed over lot 104 is no presumption of intent to convey right of way across lot 101. Railroad v. Rickards, 38 Neb. 847. (11) The case brought by Stephen Perkins settled all questions as to the width of the right of way. Bradley v. West, 60 Mo. 69. (12) The failure to record the trustee's deed, cannot affect respondent's right, as deed of trust under which sale was made was of record before the Case deed was executed.

ROY, C.—This is a proceeding to quiet title to real estate. There was a judgment for plaintiff from which defendant has appealed.

The petition was filed September 26, 1908, and contains the following: "Plaintiff for his cause of action against said defendants states that he is

Quieting Title.

the owner of all of lots 101 and 104 in Campbell's Addition to the town of Westport, now a part of Kansas City, Jackson county, Missouri, except a right of way over and across said lots, extending for a distance of ten feet on each side of the center line of the present railroad now located over

and across said property. Plaintiff further states that defendants, Kansas City and Westport Belt Railway Company and the Metropolitan Street Railway Company claim an interest in and to a part of said property adverse to that of plaintiff, the part claimed by said defendants, being a strip of ground over and across said lots, extending fifty feet on each side of the center line of said railroad.'' Then follows the usual prayer for relief in such cases.

The answer contains the following: ''Comes now the Kansas City & Westport Belt Railway Company, and for its separate answer to the petition of the plaintiff filed herein states that it is now, and has been for thirty years or more, the owner of the easement over and upon, and in the possession of, the property described in plaintiff's petition, to-wit: All of lots 101 and 104, Campbell's Addition to the town of Westport, now a part of Kansas City, Jackson county, Missouri. Wherefore defendant prays the court to enter a decree herein declaring this defendant to be the owner of the easement referred to herein over said lots, and further declare that plaintiff has no right, title or interest in or to said property, and for its costs herein expended.''

The reply was as follows:

''Now comes plaintiff and for reply to the answer filed herein by defendant Kansas City & Westport Belt Railway Company denies that said defendant is in possession of or entitled to any right of way or easement over the land described in plaintiff's petition, except the right of way in such petition described, and denies that defendant has been in possession of any right of way over said land except the right of way described in plaintiff's petition, for a period of thirty years or for any other period of time.

''Plaintiff for further reply to said answer says that if said defendant or any person or corporation under whom it claims ever had any right of way over and across said land, except the right of way described

in plaintiff's petition, it or they have long since been lost and extinguished by abandonment.

"Plaintiff for further reply to said answer says that all the rights of said defendant Kansas City & Westport Belt Railway Company over and across said property was fixed and determined by a judgment of the circuit court of Jackson county, Missouri, at Kansas City, in an action wherein Sophia Perkins, John S. Perkins and Robert Perkins, under whom plaintiff claims title to the property described in plaintiff's petition, were plaintiffs, and the Kansas City, Osceola & Southern Ry. Co., John I. Blair, DeWitt C. Blair, C. Ledyard Blair, Clarence B. Mitchell, Henry Pfeiffer and said defendant Kansas City & Westport Belt Railway Company, were defendants, in which judgment the right of said defendant to an easement or right of way over and across said property was fixed and determined and such right of way established as described in plaintiff's petition. Wherefore plaintiff asks judgment as in his petition prayed."

On April 23, 1868, Theodore S. and Oliver Case, having color of title to said lots 101 and 104, and being in possession thereof, executed a deed of trust on the lots to George W. Doggett as trustee to secure the payment of a debt to Stephen Perkins, with the usual provisions for sale by trustee in case of default, but there was no provision for a sale by a substitute trustee. It was acknowledged, and recorded on April 29, 1868.

The plaintiff read in evidence an entry in the records of the circuit court of Jackson county, dated October 31, 1874, as follows:

"This day comes Stephen Perkins, by his attorney, and presents his petition, sworn to, stating among other things that he is the beneficiary or *cestui que trust* in a certain deed of trust executed on the 23d day of April, 1868, by Theodore S. Case, Julia M. Case and Oliver Case, to George W. Doggett, trustee,

conveying certain real estate and personal property therein described, and situated in the city of Westport, county of Jackson and State of Missouri, to said Doggett in trust to secure the payment of certain notes therein described of which said Perkins was then and still is the legal owner and holder. That a part of the interest and principal of said notes remains due and unpaid and that said George W. Doggett, trustee, has since died, leaving no one authorized by the terms of said deed to execute the same, and praying the court for the appointment of the sheriff of the county trustee to execute said trust.

"It is therefore ordered and adjudged that C. B. L. Boothe, sheriff of the county, be and is hereby appointed trustee in place and stead of said George W. Doggett, deceased, to execute said trust."

There was no showing of the service of any summons or notice on any one to appear in such proceeding. The defendant objected to such evidence on the ground of irrelevancy, incompetency and immateriality, and because the court had no power to make such appointment on the showing recited in the order. The objection was overruled.

Plaintiff read in evidence a deed of assignment by the register in bankruptcy in the District Court of the United States for the Western District of Missouri, assigning the property and estate of Oliver Case & Co. and Theodore S. Case, bankrupts, to John A. Ross, assignee in bankruptcy. Also a deed dated June 18, 1877, executed by John A. Ross, assignee in bankruptcy, as aforesaid, and by C. B. L. Boothe, sheriff, the substitute trustee, to Stephen Perkins, foreclosing the deed of trust dated April 23, 1868, to which defendant made the formal objections, and also objected on the ground that it was not shown that the parties had any authority to make the deed. That deed was not recorded until June 22, 1891. It recited that it was

made in pursuance of an order of said district court and that the sale had been approved by that court.

On August 27, 1873, after the execution of the foregoing deed of trust and before its foreclosure, the Cases executed a conveyance of a right of way to the Kansas City, Memphis & Mobile Railroad Company, twenty-five feet wide on each side of the center line of its railroad through lots 102, 103, 104 and 178 in said addition. There was no lot 178 in that addition. Immediately following the execution of that deed, the grantee graded its road through lots 101 and 104 on the line where defendant's track now runs.

After the purchase by Stephen Perkins under the foreclosure of the deed of trust on the lots, he took possession and built a fence around the lots including the grade of the railroad.

On January 28, 1887, the Kansas City & Southeastern Railroad Company became the owner by mesne conveyances of the railroad and its right of way through lots 101 and 104, all of which were at that time enclosed by said fence. It constructed its road along and over that old grade during that year. At what period during that year the work was done is not shown. The evidence does not show that the road bed occupies any ground more than ten feet from the center of the track. In 1891 the railroad company repaired and improved its track through those lots and piled material for bridges and track construction on the lots along its track, the distance from the track not being definitely shown. In the years 1891 and 1892, cars of freight were placed on the track at that place and unloaded there by wagons which came on the unenclosed lots for that purpose. During the work of 1891, dirt was taken from places within twenty-five feet on each side of the center of the track for improvement of the roadbed. There was rock there, and the dirt was not taken over six inches deep.

On July 20, 1897, the defendant became the owner of the railroad by deeds which described its right of way as a hundred feet wide.

Stephen Perkins died intestate, leaving a widow, Sophia, and his children, John S. and Robert H., his sole heirs, who on August 30, 1897, brought suit against this defendant in the circuit court, the petition alleging that Stephen Perkins was the owner of said lots in his life time, and that he died intestate, and that the plaintiffs therein, as his widow and heirs were the owners of said lots. It then contains the following:

"That heretofore, to-wit, on the ―― day of August, 1897, the above named defendants did wrongfully take and appropriate for the purpose of a railroad right of way a strip of land running diagonally through said lots to the extent of ten feet on each side of the center line of the railroad roadbed, as the same is now located and situated on said lots. That said defendants took and appropriated said strip of land as aforesaid without any condemnation proceedings, or other lawful right to do so, and without the consent of the plaintiffs, or either of them, and did so without paying any compensation whatsoever, and that no compensation has ever been paid to the plaintiffs, or either of them, on account of the wrongful taking of said strip of ground for public use as aforesaid."

The petition then offered to convey the title to the right of way to defendant, and prayed for $5000 as damages for the appropriation.

On October 12, 1901, judgment was rendered in that case as follows:

"Now on this day the above entitled cause coming on regularly to be heard and the defendant, Kansas City & Westport Belt Railway Company and defendants having filed their answer herein, and the plaintiffs appearing by N. F. Heitman, their attorney, and the defendants appearing by Johnson & Lucas, their attorneys, and the parties duly waived a jury in open

court, and the court having heard and duly considered the pleadings, evidence and arguments of counsel, finds the issues in favor of the plaintiffs and assesses plaintiff's damages at the sum of six hundred dollars.

"Wherefore, it is considered, ordered and adjudged by the court that plaintiffs have and recover of and from the defendants the sum of six hundred dollars and costs of suit on account of the appropriation of a right of way for railroad purposes over the premises described in plaintiff's petition, situate in Jackson county, Missouri, to-wit: Lots one hundred and one and one hundred and four in Campbell's Addition to the town of Westport, now a part of Kansas City, Missouri, across the above described tract of land as said right of way is now located thereon; said appropriation of said right of way having taken place without the payment of just compensation, as alleged in plaintiff's petition. And defendants did in open court pay to the plaintiffs the damages as aforesaid and the plaintiffs acknowledge satisfaction of the judgment aforesaid.

"Wherefore, it is ordered, adjudged and decreed by the court that the title to said premises be fully vested in the above named defendant Kansas City & Westport Railway Company, free and clear from any and all claims."

With reference to that suit, John S. Perkins for plaintiff testified as to conversations between him and his counsel, Mr. Heitman, on one side, and Mr. Lucas, counsel for defendant, and Mr. Miller, its president, on the other side. He testified as follows:

"Q. State what was said by Mr. Lucas and Mr. Miller with reference to the right of way. A. Of course, I was introduced first and Mr. Heitman said we came over in regard to that matter, and I don't remember all that was said; but Mr. Lucas says, we are entitled to fifty feet. I says, well, if you take fifty feet you ruin the balance of our lot, it does not leave us

any frontage, and we would want pay for all of it, for the whole property. And we talked on a little bit and he said to Mr. Miller that we can get along all right with twenty feet, and my recollection is that Mr. Miller decided that twenty feet would be sufficient, and that was the final windup of it. I don't remember just exactly all that was said, it has been a good while ago, but that was the final windup and he decided—

"Mr. White: We object to what was decided.

"Q. Just tell what was said. A. They said they would take the twenty feet and agreed on the price.

"Q. What were they to pay for it? A. Six hundred dollars and pay the court costs.

"Q. Did they at any time claim to own or occupy more than twenty feet?

"Mr. White: I make the same objection as made to the principal question, and for the same reason.

"Objection overruled. To which ruling and action of the court the defendant then and there at the time duly excepted and still excepts.

"A. No, sir, they never claimed any.

"Q. Did they at any time afterwards, up to the time you sold it, make any claim to more than twenty feet? A. No, sir."

On cross-examination the following occurred:

"Q. The suit had already been filed? A. It had been filed virtually by agreement between the parties that that was all that they would need. It was a friendly suit."

In reference to that matter Mr. Lucas testified:

"Q. You bought a right of way from the Perkins in those negotiations? A. Did what?

"Q. Bought a right of way? A. No, sir, I bought peace. I had a right of way but I bought peace, just as I have done for twenty years in railroad litigation. They claimed adversely and I purchased my peace in the matter of these people.

"Q. You purchased what they were claiming? A. I purchased whatever rights they were asserting there at that time.

"Q. Did you assert at that time any rights to any more than you purchased? A. I don't recall whether I made any statement about any rights more than I purchased, or not, for I don't recall the conversation. I have got only a faint impression in my mind that somebody introduced me to Mr. Perkins, and I don't recall now whether I ever saw him more than that once.

"Q. The right of way you did pay for was ten feet on each side of the center line? A. I would not be able to tell you that. The pleadings would show whatever that was.

"Q. Wasn't the matter of the width of the right of way taken up at that time by you and Mr. Heitman and Mr. Perkins, and didn't they offer you whatever you were willing to pay for, and you said that was all you needed, was what your track occupied, and that was all you wanted? A. I would be unable to answer about that conversation, because my mind is indistinct about it. If some circumstance was recalled I might remember what the conversation was, but I will say in a general way, of course I wouldn't attempt to conclude my company's right by any negotiations for any less from Mr. Perkins, who was insisting he had a right there. I don't remember what the defense was that I believed I had, whether I claimed to have a deed or by virtue of condemnation. If it is important I can refresh my recollection by the files in the Perkins case, but in any event, whatever I did there was simply to buy peace."

In 1904 the defendant again used twenty-five feet on each side of the center of its road to pile material, and to get dirt for the repair of its track. On March 5, 1905, plaintiff obtained a warranty deed from the widow and heirs of Stephen Perkins for the lots sub-

ject to a right of way for defendant's road ten feet wide on each side of the center of its track. The right of way was never fenced from the balance of said lots until just before this suit was brought, when a fence was put up along the boundaries of the twenty-foot strip. Defendant tore that fence down and put up one along the outer boundaries of the land in controversy.

I. Objections were made to several of the deeds introduced in evidence by plaintiff in the chain of title to the Cases. We shall not consider the merits of those objections. The Cases are the common source of title. To constitute a common source of title, it is not necessary that both parties should have a good title from the common source. That would be impossible. All that is necessary is that both parties claim under the common source. The deed for the right of way from the Cases, made in 1873, described the lots as Nos. 102, 103, 104 and 178. There was no lot numbered 178. Immediately after the making of that deed the road was graded through lots 101, 102, 103 and 104. There is no doubt that lot 101 was intended instead of lot 178. Possession for the purpose of grading the track was undoubtedly taken under the Cases and because of that deed for the right of way. That makes a common source of title which cannot be impeached by defendant except by showing a title superior to that of the common source. [Miller v. Hardin, 64 Mo. 545; Feller v. Lee, 225 Mo. 319.]

*Common Source.*

II. Appellants insist that the deed made jointly by the assignee in bankruptcy and by the substituted trustee under the deed of trust to Stephen Perkins was improperly admitted in evidence. The objection to the deed was that it was "incompetent, irrelevant and immaterial, because it is not shown that the parties had any power to make the deed." The deed

*Evidence: Deed Made by Order of Court.*

recites that it was sold under an order of the court in bankruptcy and under the provisions of the deed of trust. It also recites that the sale was approved by the court. There was no objection on the ground that the orders of the court were not shown in evidence. We hold that the objection was properly overruled.

III. The fact that the sheriff was appointed as a substitute trustee under the deed of trust on an *ex parte* application of the beneficiary in the deed of trust does not invalidate such appointment.

**Ex Parte Appointment of Sheriff as Trustee.**

Sections 1 and 2, Revised Statutes 1855, pages 1554-5, provide for the appointment of the sheriff as such substitute trustee on the application of the beneficiary in a deed of trust. By the act of February 2, 1872 (Laws 1872, p. 67, sec. 1), it was provided that on such application the court should appoint "the sheriff or some other suitable person of the county" as such trustee. That section is now 11920, Revised Statutes 1909. In Martin v. Paxson, 66 Mo. l. c. 265, it was said: "No notice of such application is necessary; none is required by the statute. The proceeding is *ex parte*, and upon affidavit only; and by the provisions of the statute in force at the time the substitution in the present case was made, no question could arise as to the propriety of the appointment to be made by the court, as, under that statute, no other person than the sheriff of the county could be appointed."

In Thompson v. Foerstel, 10 Mo. App. 290, the appointment of a person other than the sheriff was upheld. In Hitch v. Stonebraker, 125 Mo. l. c. 138, this court said that such statute was in derogation of the common law and should be strictly construed. In Tatum v. Holliday, 59 Mo. 422, and in State ex rel. v. Griffith, 63 Mo. 545, it was held that a sheriff, acting under such statutory appointment, does so officially. His bond as such sheriff secures his faithful discharge

of the duties of such trustee. We are not deciding as to whether the court can appoint "some other suitable person," but we do hold that the appointment of the sheriff on such *ex parte* application is valid.

IV. The deed by the assignee in bankruptcy and the substitute trustee under the deed of trust was withheld from record from its date, June 18, 1877, until June 22, 1891. Appellant's brief contains the following:

"In the time intervening the Kansas City & Southeastern Ry. Co. purchased the property, took possession, completed the road, and expended a large sum of money in so doing, and had operated the road for about four years.

"Respondent's grantor, having withheld his deed from record and stood by and witnessed the purchase and improvement of the property by appellant's grantor, cannot now make claim against appellant."

When the Kansas City & Southeastern got its deed to the road on January 28, 1887, these lots including the right of way were enclosed with a fence and were in the possession of Stephen Perkins. "He who buys a piece of property in the open and visible possession of a third person is chargeable with notice of the title and right of that person in the premises." [Wiggenhorn v. Daniels, 149 Mo. l. c. 165; Squires v. Kimball, 208 Mo. l. c. 119.]

Purchasing Property in Visible Possession of a Third Party.

The defendant and all those under whom it claims were at all times affected with constructive notice by the record that the legal title to the lots was outstanding in the trustee under the deed of trust in which Doggett was named as trustee. As between the trustee and Stephen Perkins that legal title passed by the foreclosure sale. The purchase of the equity of redemption, after the foreclosure and before the recording of the foreclosure deed, without notice of such

foreclosure to the purchaser of the equity,
**Foreclosure Deed not Recorded.** would not have the effect of entirely
avoiding that sale as between the pur-
chaser of the equity and the purchaser
under the foreclosure. At most, such failure to re-
cord would only let in the purchaser of the equity to
redeem the land from the the deed of trust. We are
frank to say that we have found no case squarely in
point. But it has been held that where the foreclosure
sale is irregular and not void, such irregularity can
only be taken advantage of in an action to redeem.
[Adams v. Carpenter, 187 Mo. 613.] In such action
to redeem, the plaintiff herein would.be in the position
of holding the legal title which was formerly in the
trustee.

V. We thus find, as a result of the foregoing con-
clusions, that the record title to the land in contro-
versy is in the plaintiff, and the question
**Adverse Possession: Evidence.** remains as to whether defendant has ac-
quired title by adverse possession. The
evidence does not show at what time in
the year 1887 the track was constructed across the lots.
On August 30, 1897, the Perkins suit against this de-
fendant was instituted. It does not appear that ten
years had intervened since the track was constructed.
The witnesses Heitman and John S. Perkins for plain-
tiff testified that such suit was filed under an arrange-
ment by which it was agreed that twenty feet was all
defendant wanted for its right of way. Mr. Lucas,
witness for defendant, disclaimed being able to re-
member what was said in that conversation. We are
justified in finding that such suit was brought under
such agreement. Such being the case, the defendant
was not on August 30, 1897, asserting any claim to the
land in controversy, but had yielded such claim. It
had not prior to that time acquired title by adverse
possession, because there is a lack of evidence to show

that ten years had then expired since the track was built. One who asserts title by adverse possession has the burden of proving it. [Hulsey v. Wood, 55 Mo. 252.]

Defendant having on August 30, 1897, ceased to make any claim to the land in controversy, whatever right it may have by adverse possession must have accrued since that date. The possession under claim of right must have been continuous. Possession under a claim of right since 1897 cannot be tacked onto such possession under claim of right prior to 1897, because of the break in the claim.

We therefore inquire whether, since 1897, the defendant has had the continuous adverse possession of the land in dispute under a claim of right.

The judgment in the Perkins case is *res judicata* against the defendant on the proposition that defendant was not, at the date of the institution of that suit, the owner of the twenty-foot strip either by paper title or by adverse possession. The evidence in this case does not show whether the deeds in defendant's chain of title were in evidence in that case. They were proper evidence and *might* have been introduced in that case to show defendant's title to the twenty-foot strip. So far as the subject-matter is concerned in another suit, the parties to the former suit and their privies are concluded as to all matters which were or which might have been submitted to the court for its consideration on the issues in the first case. [Donnell v. Wright, 147 Mo. l. c. 647; Hamilton v. McLean, 169 Mo. l. c. 73.]

Res Judicata.

The court adjudged in the Perkins case that the deeds under which defendant claims did not constitute title to the twenty-foot right of way. That judgment, itself, decreed the title to that strip to defendant in consideration of the $600 damages adjudged to the plaintiffs therein. Since that decree defendant has not held that right of way under any color of title,

but under an actual title, i. e., that judgment. The defendant certainly does not hold actual adverse possession of the twenty-foot strip under color of title to the whole fifty feet.

In Crispen v. Hannavan, 50 Mo. l. c. 544, it was said: "Ordinarily, the possession of one who does not hold the true title can extend only to the land in actual occupancy. The owner, who holds constructive possession of all lands not actually occupied by others, cannot be disseized by a mere claim. There must be something more. In addition to the actual occupancy of a part—the open, notorious and continuous possession as owner—there must be a claim to the whole, by the same right under which the part actually occupied is held, and such claim must be *bona fide* and evidenced by some paper or proceeding, or relation, that makes the claimant the apparent owner of the whole. [Fugate v. Pierce, 49 Mo. 441.]"

After the decree in the Perkins case the plaintiff's deeds did not constitute color of title to the land in controversy. A claim of right under color of title includes good faith, and good faith is destroyed when the color of title is adjudged worthless as between the parties. [Sholl v. Coal Co., 139 Ill. 21; Hintrager v. Smith, 89 Iowa, 270.]

Appellant claims that under the authority of Hargis v. Railroad, 100 Mo. 210, it will be presumed that defendant's possession extended to the full statutory width of a hundred feet. That case says that such is the presumption where there is nothing appearing to the contrary. In this case defendant does not even claim a hundred feet, and its actual possession is confined to the twenty-foot strip decreed to it by the court. It has no color of title outside the twenty-foot strip.

There are numerous other questions raised in the briefs of counsel, but the propositions above announced

are decisive of the matters involved. The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.