McBRIDE REALTY COMPANY, RESPONDENT, v. T. A. GRACE, APPELLANT.*

Kansas City Court of Appeals.  December 31, 1928.

*Cravens & Bates* for appellant.

*Moore & Moore* for respondent.

FRANK, C.—This is an action by plaintiff, respondent here, to enjoin defendant from attaching the second story and roof of a building under process of construction, to the wall of an adjoining brick building owned by plaintiff. A temporary injunction was granted, and on final hearing was made permanent. Defendant appealed.

The facts are as follows.

Plaintiff owns the middle twenty feet of lot 7 in block 6, original town, now city of Excelsior Springs in Clay county, Missouri, upon which there is a two-story brick building extending the full length of the lot. This building was erected in 1905 by Allen M. Bates and John H. Samples, plaintiff's predecessors in title.

Defendant owns a strip of ground ten feet wide adjoining plaintiff's land on the east. The east wall of plaintiff's building is twelve inches wide and is located on the line between plaintiff and defendant's property, thus locating one-half or six inches of the wall on defendant's land. The wall was constructed and paid for by plaintiff's predecessors in title. Windows were constructed in this wall in the second story of the building, at the time the building was constructed, for the purpose of giving light and air to the rooms in the second story. There are no windows in the wall in the first story of the building. At the time plaintiff's building was constructed, the ten-foot strip of ground now owned by defendant was owned by one Mary J. Elder. Mrs. Elder died in 1912, leaving as her only heirs, her husband and one daughter, a Mrs. Starks, who inherited the ten-foot strip of ground and afterwards sold and conveyed it to defendant in 1919.

At the time plaintiff's building was built, there was a one-story frame building on the ten-foot strip of ground now owned by defendant. A part of this frame building was sawed off in order that the center line of the twelve-inch wall might be located on the line between the two properties. At the time this work was being done, Mary J. Elder, who was the owner of the ten-foot strip of ground with the frame building thereon, knew what was being done, and saw and observed the work as it progressed.

James Starks, a son-in-law of Mrs. Elder, testified that in 1905, before plaintiff's building was built, he, Mrs. Elder and John Samples

had a conversation in which it was agreed that the east brick wall of the two-story brick building now owned by plaintiff, should be located six inches over the line, and Mrs. Elder, or Starks who was then her tenant, should have the right to attach the roof of the one-story frame building to the brick wall, but the one-story building should not be built or attached any higher.

Defendant testified that he never heard of this agreement until two or three years after he purchased the ten-foot strip; that he bought the property in 1919, and, at that time, the one-story frame building thereon was attached to the brick wall; that he had known the property for ten or fifteen years before he bought it, and during that time it was in the same condition as when he purchased it; that he knew at the time he bought the property, that one-half, or six inches, of the east wall of plaintiff's building was located thereon.

John Samples, plaintiff's predecessor in title, built the two-story brick building in 1905. He testified that he always openly claimed the east wall of the building and the right to maintain it. He also testified that he always claimed that, Mrs. Elder, defendant's predecessor in title, had no right to attach her building to this wall above the first story.

The various deeds conveying these properties, do not mention any agreement with reference to the brick wall or the rights of the parties therein.

Contention is made that the court erred in giving judgment for plaintiff, because there was no showing of any agreement binding Mrs. Elder, her heirs or assigns, not to attach her building to plaintiff's wall above the first story.

James Stark, a son-in-law of Mrs. Elder, testified on this subject as follows:

"Q. State the substance of any conversation you had with Mrs. Elder that you can recall about your making arrangements for this wall to be put over. A. Well, she gave me the privilege of putting the building up there, putting it up and I was to tie onto these people.

"Q. What did she say to you about making arrangements with them, if any? A. We made arrangements with Mr. Samples.

"BY THE COURT: Who made the arrangements? A. My mother-in-law and myself.

"Q. Now you said you heard a conversation—was present at a conversation between yourself and Mrs. Elder and Mr. John Samples. Where was that? A. That was right there in front of the building.

"Q. You may go ahead and state in substance what was said about putting the wall over six inches and about the arrangement that was made. A. That it could come over six inches and I could tie onto them. When the building on the other side was put on, Mr. Holman put my roof on and I was to build my ends up.

"Q. Why do you say 'I'? You say the arrangement was 'I'. You speak of your doing it. A. Well, I put the building in and I was only to go up just so high with it so I could have a barber shop.

"By the Court: Did you put the building up yourself? A. Yes, sir.

"Q. How high were you to build the building? A. Just about one story, just so I could have room for a shop there.

"Q. And what if anything was said about your right or whether you could or could not go higher than one story with the building? A. I wasn't to go any higher.

"Q. You say that Mrs. Elder was present at the time that was made between you and Mr. Samples? A. Yes, sir."

The contention made on this point is (1) that the evidence of witness, Stark, does not clearly and unquestionably show that Mrs. Elder agreed not to construct her building higher than one story, and (2) that the contract, if any, was made between Stark and Samples, and Mrs. Elder being dead, Stark was not a competent witness to show that Mrs. Elder authorized him to make such contract on her behalf.

We do not agree with the contention that the evidence is insufficient to show that Mrs. Elder agreed not to attach her building to plaintiff's wall above the first story. Mrs. Elder, Stark and Samples all participated in the conversation which resulted in the making of the contract. The clear meaning of Stark's testimony is that the wall of Samples' building could extent six inches over on Mrs. Elder's land, and that the one-story barber shop on her land could be attached to the wall of the first story of Samples' building, and that the barber shop would not be built or attached higher than one story. No other conclusion could be legitimately and fairly drawn from this evidence. We recognize the rule that evidence to establish a contract of the character in question, must be clear and convincing, and we think the evidence in this case measures up to that rule.

Neither do we agree with appellant's contention that Samples made the contract with Stark and not with Mrs. Elder, the owner of the land. Some answers made by Stark, if disconnected from the remainder of his testimony, would lend color to appellant's contention that Samples made the contract with Stark and not with Mrs. Elder, but considering all of his evidence, which we must do, it clearly shows that the contract was made with Mrs. Elder and not with him.

When asked what the arrangement was with reference to putting the wall of plaintiff's building six inches over Mrs. Elder's land, his answer was, "That it could come over six inches and I could tie onto them." He was then asked, "why do you say, 'I'? You say the arrangement was '.' You speak of your doing it." His answer was,

"Well, I put the building in and I was only to go up just so high with it so I could have a barber shop." This answer shows that his reason for using the word "I" was not because the arrangement or contract was made with him, but because he built the building on Mrs. Elder's land. Following this answer, the court asked the witness, "Was that a contract with you then, all the time?" His answer was, "With my folks, my mother-in-law." Stark testified that his mother-in-law, Mrs. Elder, gave him the privilege of building a barber shop on her land and he was to tie it to the wall of plaintiff's building. He was then asked, "What did she say to you about making arrangements with them, if any?" His answer was, "We had made the arrangements with Mr. Samples." He was then asked, "Who made the arrangements?" His answer was, "My mother-in-law and myself." The fact that Stark was present and participated in a conversation between Samples and Mrs. Elder which resulted in the making of the contract, does not prove that Stark acted as the agent of Mrs. Elder and made the contract for her, especially so, in the light of his testimony that the contract was with his mother-in-law. It is our conclusion that the evidence shows that Samples made the contract with Mrs. Elder and not with Stark as her agent. If Stark did not make the contract for Mrs. Elder, then it is not necessary to determine the contention that he was not a competent witness to show that he was authorized to make it. Stark was not a party to the contract or cause of action at issue and on trial. He did not make the contract as agent for Mrs. Elder. In this situation the death of Mrs. Elder did not disqualify him as a witness.

Contention is made that the court erred in holding that defendant had knowledge of the oral agreement relative to the east wall of plaintiff's building, and that such agreement was binding on defendant.

The oral contract, when made, was within the Statute of Frauds, and, therefore, non-enforcible. Pursuant to the making of the contract, it was performed by both parties. Samples, plaintiff's predecessor in title built and paid for the two-story brick building, the east wall of which extended six inches over on Mrs. Elder's land. The one-story frame building on Mrs. Elder's land was attached to this wall. All this was done in 1905, and both buildings have so remained since that time. The performance of the oral contract by both parties, took it out of the operation of the Statute of Frauds, the result of which was to render the contract binding on both parties thereto. [Maupin v. Railway, 171 Mo. 187; Hanson v. Beaulien, 176 N. W. (Minn.) 178, 179.]

The next question is whether or not the contract is binding on appellant, a subsequent purchaser of Mrs. Elder's property.

The contract, being oral, necessarily did not appear of record, neither is it mentioned in any of the deeds conveying the property. Appellant testified that he never heard of this contract until two or three years after he bought the property from Mrs. Elder's heirs. The contention is that appellant is not bound by the oral agreement because he had no notice of it.

Appellant testified that he had known the Elder property ten or fifteen years before he bought it in 1919; that during all of that time the property was in the same condition as when he purchased it; that at the time he purchased it, he supposed that the wall of plaintiff's building was six inches over on his property because he had only nine feet in the clear.

Under appellant's own evidence, he knew at the time he purchased the property, that plaintiff was in possession of a six-inch strip along the entire east side thereof, and had the east wall of his building located thereon. In other words, when appellant purchased the property he knew, at that time, that plaintiff was in possession of a part of it.

One who purchases real estate in the open and visible possession of a third person is chargeable with notice of the title and right of such third person. [Stone v. K. C. & W. B. Ry. Co., 261 Mo. 61, 169 S. W. 88; Jones v. Nichols, 280 Mo. 653, 216 S. W. 962; Swift v. Buford, 217 S. W. 980, 280 Mo. 432; Widgenhorn v. Daniels, 149 Mo. 160, 50 S. W. 807.] Where land is purchased from one not in possession, and the purchaser makes no inquiry of those in possession as to who owns or claims the land, the buyer is not an innocent purchaser for value. [Titus v. North K. C. Development Co., 264 Mo. 229, 174 S. W. 432; Davis v. Wood, 161 Mo. 17, 61 S. W. 695.]

Plaintiff's possession of the six-inch strip of land on which his wall was located, was not, as a matter of law, notice to appellant of the contract under which plaintiff claimed such possession, but it was sufficient to put appellant upon inquiry as to the nature of plaintiff's rights (Martin v. Jones, 72 Mo. 23; Freeman v. Moffit, 119 Mo. 280, 25 S. W. 87), tended to show actual notice, and was sufficient to justify the court in finding that appellant had actual notice of plaintiff's rights at the time he purchased. [Shumate v. Reavis, 49 Mo. 333; Vaughn v. Tracy, 25 Mo. 318; Dray v. Doyle, 99 Mo. 459, 12 S. W. 287.]

Our conclusion is that Mrs. Elder's agreement not to attach her building to Samples' wall above the first story, was binding on her. On the faith of this contract Samples took possession of the six-inch strip, with the knowledge and consent of Mrs. Elder, expended money in the erection of a two-story brick building, constructed windows in the wall which stood on the six-inch strip, for the purpose of giving light and air to the office rooms on the second floor, believing as he

had a right to believe, that Mrs. Elder would not close the windows by erecting a second story on her building and attaching it to his wall, because she had agreed that she would not do so. Plaintiff now owns the building built by Samples. It would be inequitable to permit appellant, who stands in the shoes of Mrs. Elder, to injure plaintiff, by doing that which Mrs. Elder agreed should not be done.

Defendant places much reliance on the case of Sharp v. Cheatum, 88 Mo. 498. In that case owners of adjoining premises made an agreement whereby one was to build a party wall, and the other, when he should use it in the construction of a building on his lot, was to pay one-half the cost of such wall. A building was constructed by one of the parties, with the wall on the line between the properties. Later the other party sold and conveyed his lot, and the purchaser erected a building thereon and joined and connected it with the party wall which had been built by the other party, and refused to pay one-half the cost of the party wall, on the ground that he had no notice that his predecessor in title had agreed so to do, in event a building on the lot he purchased should be attached to it. This agreement was not of record. The court held that the subsequent purchaser was not liable, because he purchased without notice of the agreement. The facts in the instant case do not bring it within the rule announced in Sharp v. Cheatum, supra.

Speaking to a kindred question in Harbor v. Evans, 101 Mo. 661, our Supreme Court cited with approval the case of Dauenhauer v. Devine, 51 Tex., 480, where it was held that a contract for a party or dividing wall between two buildings obviously did not contemplate doors or windows.

If windows are not an incident to a party wall, it must necessarily follow, that when defendant purchased his property, knowing at the time, that for a period of fifteen years windows had been maintained in the east wall of plaintiff's building, above the first story, such facts were sufficient notice to him that this wall, above the first story, was not a party wall, and he was put upon his inquiry concerning the right of plaintiff to maintain the wall with the windows therein.

As the judgment must be affirmed for the reasons already stated, we will not determine the contention that plaintiff acquired by perscription an easement and right to maintain the wall with the windows therein. Judgment affirmed. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.