Beulah Cockrell, Appellant, v. Frank B. Taylor, Olie Taylor, National Life Insurance Company, a Corporation, et al.— 145 S. W. (2d) 416.

Division One, December 11, 1940.

(1)

*N. C. Hawkins* for appellant.

*Ward & Reeves* for respondents.

HAYS, P. J.—This is an appeal by the plaintiff from a decree of the Circuit Court of Pemiscot County, Missouri, in favor of the defendants. The suit is one in equity to perfect title to some sixty acres of land and to set aside a sale of said land in foreclosure of a deed of trust which we shall hereafter refer to as the Sanders mortgage. The appellant, who will be spoken of hereafter as plaintiff, claims title under certain conveyances from the grantor in said deed of trust; and respondents Frank B. Taylor and Olie Taylor claim title as purchasers from the purchaser at the foreclosure sale. Their co-defendant the National Life Insurance Company, a corporation, is holder of a mortgage from the Taylors. Plaintiff's petition charges that the foreclosure sale was invalid for several reasons which we shall hereafter separately notice.

By their separate answer the defendants Frank B. Taylor and Olie Taylor, after admitting their claim to ownership and denying the other allegations of the petition, pleaded that they took title to said land as bona fide purchasers for value and without notice of this plaintiff's claim. They also pleaded certain facts as an estoppel against the plaintiff and that the issues involved in the present case had been fully adjudicated in a former action in which the plaintiff, although not a formal party to the record, was a real party in interest. Their answer seeks affirmative relief, asking that the title to the

land be decreed to be in them; and, in the alternative, that they be subrogated to the rights of the mortgagee under the Sanders mortgage.

The National Life Insurance Company, by its separate answer, admitted its claim of interest in the real estate and pleaded that it too was a bona fide purchaser for value without notice.

To fully understand the contentions of the plaintiff it will be necessary to briefly trace the chain of title prior to the foreclosure of the Sanders mortgage. On and prior to April 1, 1924, one Ola L. Sanders, a sister of the plaintiff, was the fee simple owner of this land. On the last mentioned day she executed and delivered the deed of trust, the foreclosure of which is here in question, to the Liberty Central Trust Company of St. Louis, trustee for the Liberty Central Joint Stock Land Bank. The Trust Company was a Missouri corporation and the Land Bank had its principal office and place of business in St. Louis. In May, 1924, Ola L. Sanders conveyed her equity by general warranty deed to her sister, the plaintiff, subject to the above mentioned deed of trust. In September, 1925, the Liberty Central Joint Stock Land Bank executed, delivered and placed of record a deed of assignment assigning the Sanders deed of trust to the Kansas City Joint Stock Land Bank. In February, 1928, the Federal Farm Loan Board appointed H. M. Langworthy as receiver for the Kansas City Joint Stock Land Bank to liquidate the same. In July, 1931, Langworthy executed, acknowledged, delivered and caused to be recorded a deed of assignment assigning the Sanders mortgage and the note secured thereby to the Phoenix Joint Stock Land Bank. Said assignment states among other things that it was authorized by order of the Federal Farm Loan Board, but the order itself is not put in evidence.

In September, 1931, the Phoenix Bank, by a duly signed and acknowledged instrument, executed by its vice president, assigned said note and deed of trust to the Farm Mortgage Holding Company.

Meanwhile in August, 1928, the sheriff of Pemiscot County executed a deed under general execution purporting to convey the equity theretofore owned by the plaintiff in said land to her sister Ola L. Sanders. Neither the judgment nor execution are shown in the record. On the following day Ola L. Sanders executed a quitclaim deed back to her sister. This quitclaim deed was not recorded until 1936. Mrs. Sanders testified that it was not delivered to the plaintiff until about the time it was recorded, but plaintiff says it was delivered to her shortly after its execution.

The Liberty Central Trust Company, named as trustee in the Sanders mortgage, merged and consolidated with the First National Bank of St. Louis, after which it ceased to operate as a trustee in any matters. In furtherance of this merger agreement the Trust Company on April 3, 1929, resigned in writing as trustee under this deed of trust.

6

The situation in March, 1932, at the time when the steps preliminary to foreclosure were taken, was as above outlined. To further understand the foreclosure procedure, however, certain of the recitals in the Sanders deed of trust must be noted. The mortgage provided that the mortgagor should pay all taxes and that, ''It shall be the privilege of said party of the third part (mortgagee) and assigns in case of default on the part of said party of first part . . . to promptly pay all taxes . . . and in the event the said party of the third part . . . shall expend any money to protect the title or possession of said premises, or for such taxes . . . then all such money so expended . . . shall be a new and additional principal sum of money secured by this instrument, and shall be payable on demand, and may be collected with interest thereon at the rate of 8% per annum, from the time of so expending the same.'' The mortgage first provided that if any installment on the note or any part thereof should not be paid when due or if general or special taxes were not promptly paid ''or if default be made in the due fulfillment of said covenants and agreements or any of them,'' the deed of trust might be foreclosed through trustee's sale. The provisions in regard to trustee's sale were that the party of the second part, whether acting in person or by attorney in fact, appointed by instrument in writing, or, in case of death or absence in the county or other disability, or refusal to act, its successors in trust was to proceed to sell the property.

Prior to March, 1932, state, county and drainage district taxes for several years had not been paid by either the plaintiff or Mrs. Sanders. These taxes were paid by Langworthy during the time he held the deed of trust.

On behalf of the defendants a Mr. R. E. Bailey testified that in March, 1932, he filed an affidavit to the effect that the trust company had resigned as trustee in the Circuit Court of Pemiscot County. The original affidavit is missing from the files, but Mr. Bailey certified that what he said was an exact copy thereof and the court received the same in evidence. This affidavit was made by Edward C. Aldwell, vice president of the Farm Mortgage Holding Company, on whose behalf he executed it. It sets out that the Liberty Central Joint Land Bank was the beneficiary named in the Sanders mortgage; that it had assigned said deed of trust and the note secured thereby to the Kansas City Joint Stock Land Bank. It sets out the appointment of Langworthy as receiver and his assignment ''to the Farm Mortgage Holding Company,'' and states that the latter company was the legal holder of the note and deed of trust. It recounts the merger of the Trust Company with the First National Bank and the fact that the Trust Company was no longer qualified to act as trustee, and had resigned and that the deed of trust contained no specific provisions for the appointment of a substitute trustee. The formal

record of the court was not offered in evidence to show an order made in pursuance of the filing of said affidavit. However, the plaintiff herself offered from the files of the court what appears to be the original order signed by the judge, appointing James M. Reeves as substitute trustee, and containing a certificate of the clerk reciting that the same was spread on the record in book 35 at page 311. The defendants, in this connection, offered a minute entry from the clerk's minute book showing the filing of the affidavit and the appointment of a trustee, and it seems to be conceded by both parties that the signed order was indeed properly spread of record in the permanent record of the court.

Immediately after Mr. Reeves' appointment he, at the request of the Farm Mortgage Holding Company, advertised the real estate for sale. The advertisement seems to be legal in all respects; and, in accordance with the notice so given, Reeves offered the property for sale at public auction and the same was stricken off to the Farm Mortgage Holding Company, the highest bidder. A few days later Reeves executed and delivered to the Holding Company a trustee's deed conveying said premises.

On the day of sale and after the mortgaged premises had been declared sold to the Holding Company, but before the execution of the trustee's deed, the Holding Company and plaintiff entered into a contract whereby she leased said real estate for the remainder of 1932 on the usual crop rent basis. Plaintiff says that she executed this lease because the company's agent told her that otherwise she would be immediately dispossessed and because he promised that she could buy back the land and her rental payments would be considered part of the purchase price. This the agent vigorously denied. Plaintiff retained possession under the lease for the remainder of the year and at the end hereof refused to deliver up possession until an action for unlawful detainer had been brought, judgment rendered and execution issued.

Plaintiff's evidence tends to show that during the time the unlawful detainer suit was pending the Taylors were negotiating with the Holding Company for the purchase of the land. The Taylors admit that they knew of the pendency of the suit and that a judgment had been obtained to get possession of the land but deny that they knew the nature of any claim to ownership made by the plaintiff or her sister. Thereafter the Holding Company conveyed the land to the Taylors and the Taylors, to secure the purchase price which they had agreed to pay the company, mortgaged it to their co-defendant the National Life Insurance Company. The agent of the latter company, who negotiated the loan, testified that he had no knowledge of any claim on behalf of the plaintiff.

On February 17, 1934, Ola L. Sanders filed a suit in the circuit court claiming that the foreclosure of the Sanders deed of trust was

invalid, and specifically attacking the appointment of Mr. Reeves as substitute trustee. In said suit the defendants prevailed and plaintiff appealed to this court. We dismissed her appeal for failure to comply with the rules. There is evidence that the plaintiff signed a cost bond for her sister in that case and, after final judgment, paid up the costs. There is also evidence that she paid the court reporter for transcribing the bill of exceptions, but she said she did this with money furnished by her sister. Defendants placed on the stand one of the attorneys for the plaintiff in the former suit, and, over the plaintiff's objection, he testified that his services had been retained by the present plaintiff in connection with that litigation. It is this former suit upon which the defendants rely as a prior adjudication of the issues here.

█ If the proceedings in connection with the foreclosure of the Sanders mortgage were absolutely void and no legal title passed to the purchaser, the question of whether or not the defendants took as bona fide purchasers without notice would be immaterial. On the other hand, if the foreclosure proceedings vested the legal title in the Holding Company but were subject to be avoided in equity, such equity would be cut off by a sale to an innocent purchaser for value.

Plaintiff attacks the validity of the foreclosure proceeding on the ground that the appointment of Mr. Reeves as successor trustee was improper in that no notice of the application for an appointment was served upon plaintiff or Mrs. Sanders. The appointment was made under Sections 3135, 3137, R. S. Mo. 1929. A careful reading of those sections discloses that they make no provision for notice to be given the mortgagor or the record holder of the equity of redemption. This statute, as originally adopted, required the court to appoint the sheriff of the county as successor trustee. In Martin v. Paxson, 66 Mo. 260, we held that under the statute, as it then existed, notice to the mortgagor or record owner was unnecessary. The statute was then amended to permit the appointment of the sheriff "or some other suitable person." In Stone v. Kansas City and Westport Belt Railway Company, 261 Mo. 61, 169 S. W. 88, an ex parte application for the appointment of a successor trustee was made, but the court actually appointed the sheriff. Limiting the effect of our decision to the facts there before us, we said: "We are not deciding as to whether the court can appoint 'some other suitable person,' but we do hold that the appointment of the sheriff on such ex parte application is valid." In neither of these cases was the constitutionality of the statute raised.

But in the Stone case we held also (l. c. p. 75) that notice to the mortgagor was unnecessary. And in the later case of Bridges v. Smith (Mo.), 213 S. W. 858 we again so held, and further held that the appointment by a note holder of a substitute trustee other than the sheriff, and the ratification of the same by the circuit court, was·

valid notwithstanding the mortgagor was not notified that a substitute trustee would be appointed. The court pointed out that the deed of trust clothed the holder of the debt secured thereby with the legal right, in stated contingencies, to appoint a substitute trustee by an instrument in writing; that, "The very terms of the instrument contemplated that said appointment might be made by the legal holder of the debt without notice to John W. Smith (the mortgagor) or anyone else, and regardless of his wishes in the premises. The agreement thus made is neither contrary to public policy, nor invalid." (Citing cases, l. c. p. 860 and the then applicable statutes—the latter identical with those supra in the 1929 Revision.) "The proceeding in the circuit court to ratify the appointment of plaintiff, as trustee, made by the holder of the note, is not void for failure to give defendants (the mortgagors) notice of said proceeding."

Plaintiff now contends that the statute, as so construed, deprives her of her property without due process of law. In this connection she pleads the provision of Sec. 30, Art. II of our State Constitution and of Amendment V to the Constitution of the United States. The last cited provision is contained in the Bill of Rights and, as such, is a limitation solely upon the powers of the Federal Government. It has no application to actions by the states. [Gaines v. Washington, 277 U. S. 81, 48 Sup. Ct. 468, 72 L. Ed. 793; Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97.] Plaintiff neither cites nor relies upon the due process clause of the Fourteenth Amendment which is a limitation upon State power. The question presented therefore is solely one of State law. But in determining it the decisions of the Supreme Court of the United States have been accorded persuasive force.

Ordinarily in a proceeding before a court or any judicial or quasi-judicial tribunal, due process, "the law of the land," requires that every person who may be adversely affected by action of the tribunal must be given notice and an opportunity to be heard. He has the right to appear in person and by counsel, to offer evidence and to present proper arguments as to law and fact. [Snyder v. Massachusetts, 291 U. S. 97, 54 Sup. Ct. 330, 78 L. Ed. 674, 90 A. L. R. 575; Powell v. Alabama, 287 U. S. 45, 53 Sup. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527.] However, in determining the constitutionality of a State law, it is to be read with the construction placed upon it by the State court. [Bandini Petroleum Company et al. v. Superior Court of State of California in and for Los Angeles County et al., 284 U. S. 8, 52 Sup. Ct. 103, 76 L. Ed. 136, 78 A. L. R. 826.] That under certain exceptional circumstances the requirement of notice may be dispensed with has, however, been recognized from an early date. [Den v. Hoboken Land and Improvement Company, 18 How. 272, 15 L. Ed. 372.]

A case closely in point in principle is Chaloner v. Sherman, 242 U. S. 455, 37 Sup. Ct. 136, 61 L. Ed. 427. A state court in New York had duly adjudicated the plaintiff as insane, and appointed a guardian. This guardian later resigned and the court, without giving notice to the plaintiff, appointed the defendant as a successor guardian. The plaintiff attacked the validity of such appointment, but the failure to give notice was held not to violate the due process clause of the Fourteenth Amendment, as no substantial rights of the plaintiff had been infringed thereby. In the present case we think that the substantial rights of the plaintiff were not substantially affected by the substitution of one trustee for another.

In this connection it is also to be noted that the notice and opportunity for hearing required by the due process clause need not be given at the very inception of the proceedings in all cases. If before the substantial rights of an interested party are finally determined he is afforded notice and opportunity to have his day in court, the requirements of due process are met. [King v. Mullins, 171 U. S. 404, 43 L. Ed. 214; Wilson v. Standefer, 184 U. S. 399, 46 L. Ed. 612; Collins v. Welsh (C. C. A. 9th Cir., Cal.), 75 Fed. (2d) 894.] In the present instance no substantial rights of the plaintiff were affected by the mere appointment of a substitute trustee. Her rights could be affected only when such trustee sought to foreclose or brought ejectment to gain possession of the mortgaged premises. In either instance the plaintiff would necessarily be notified and be afforded her day in court. We must, therefore, rule the constitutional point raised against the appellant.

Appellant further objects to the appointment of Mr. Reeves on the ground that it does not appear that the affidavit upon which the order was based was presented to the court. The formal record or judgment roll would have been the best evidence of what occurred, but the plaintiff herself offered the original signed order and it appears from her abstract that this was "spread upon the clerk's records in book 35, at page 311." Of course the record is that of the court and not of the clerk, although it is kept by the clerk. But by the clerk's record must be meant the judgment roll of the court itself. Looking then to the order, we find that it recites that the matter came on regularly for hearing and was submitted to the court and that the court gave certain findings of fact which necessarily implies that the affidavit was presented to the judge at the time.

Appellant next contends that Mr. Reeves was not a suitable party within the meaning of the statute, because he was attorney for the mortgage holder. Without deciding whether or not a mortgagee's attorney may be appointed as successor trustee, we need only point out that there is no evidence that Mr. Reeves was attorney for the Farm Mortgage Holding Company until after the date of his appointment and after the foreclosure sale. On the contrary the record shows that

Mr. Reinhardt and Mr. Bailey were attorneys for the company at that time.

Appellant next attacks the foreclosure on the ground that the Farm Mortgage Holding Company was not the owner and holder of the note and deed of trust at that time. Section 3094, R. S. Mo. 1929 makes the recitals in a trustee's deed prima facie evidence of the truth of the matters therein set out, and this deed did recite that at the date of foreclosure the Holding Company held the note and deed of trust. There is a distinction between the endorsement of a note and its assignment. Both endorsement and assignment transfer title to the assignee or endorsee; but the endorsement, if made before maturity, confers upon him the special rights of a holder in due course. While an endorsement must be made by written signature on the back of the instrument itself, an assignment of a note or mortgage may be by separate instrument or even by parol. [Bishop v. Chase, 156 Mo. 158, 56 S. W. 1080, 79 Am. St. Rep. 515; O'Connor v. Slatter (Wash.), 93 Pac. 1078.] Here the assignments of the mortgage from the original mortgagee down to the Holding Company were all in writing and were duly acknowledged and recorded. The acknowledgment and recordation are prima facie evidence of due execution and delivery. [Keener v. Williams, 307 Mo. 682, 271 S. W. 489.]

Appellant insists that the note secured by the deed of trust bore an endorsement of the Liberty Central Joint Stock Land Bank to one Williams as collateral security for certain bonds and was never reendorsed by him. But the evidence shows that said note was in the hands of the Holding Company at the time of foreclosure, and the presumption is that it was lawfully in its possession. Title might have been retransferred by Williams without endorsement.

Appellant complains that Mr. Langworthy's authority as receiver to sell this note is not specifically shown. It is true that 12 U. S. C. A., sec. 963, in providing for the appointment of receivers for land banks, makes applicable to such receiverships the statutory provisions governing receiverships of national farm loan associations, and that Section 961, referring to the latter type of receiverships, requires an authorization by the Farm Credit Administration for a sale by a receiver of assets of the association. The record does not contain a certified copy of the order in this case. However, as we have seen, the trustee's deed recites that the Holding Company was the legal holder of the note and deed of trust and there is no rebutting evidence showing that the Farm Credit Administration failed to make the necessary order.

Appellant says that the mortgage was not in default at the time of foreclosure. As we have seen it provided that taxes should be paid by the mortgagor. It was admitted that neither plaintiff nor her sister had paid taxes for a number of years. This failure on their

part constituted a breach of the covenants of the mortgage which alone would warrant foreclosure. It is true that this failure on the part of the mortgagor to pay the taxes would not have made the entire note come due, and, no doubt, the mortgagor would have been entitled to stop this foreclosure by tendering the amount of default taxes; but no such tender was made.

Appellant says that Langworthy paid the taxes and had not assigned his claim therefor to the Holding Company. But the right to recover such taxes became part of the debt secured by the deed of trust and when the deed of trust was assigned the right passed with it.

Appellant says that the consideration paid by the Holding Company at the trustee's sale was inadequate. The evidence shows that the land was worth about sixty dollars an acre. The Holding Company's bid was one thousand dollars, or approximately one-fifth of the value of the land. For the courts to set aside a trustee's sale for mere inadequacy of consideration, the inadequacy must be so gross that it shocks the conscience of the chancellor and is in itself evidence of fraud. In Harlin v. Nation, 126 Mo. 97, 27 S. W. 330, we refused to set aside a sale where the consideration paid was one-fifth the value of the land. It is true that in West v. Axtell, 322 Mo. 401, 17 S. W. (2d) 328, we did set aside a sale in which the consideration was approximately one-fifth the value of the lands; but in that case the sale was held at an unusual time and there was a chilling of the bidding by acts of the mortgagee. No such circumstances are here present.

From what we have said above it appears that the trustee's sale was neither void in law nor voidable in equity, but was in all respects valid and binding. It is therefore unnecessary to notice defenses of estoppel and res judicata raised nor to determine whether or not the defendants were bona fide purchasers for value. Nor is it necessary for us to determine in that connection whether the evidence of the attorney representing the plaintiff in the former litigation was admissible or barred because it was a privileged communication. It follows, therefore, that the decree entered below was a proper one and that the case must be affirmed. It is so ordered. All concur.