WILLIAM M. CUNNINGHAM, Respondent, v. ELM GROVE ZINC & LEAD MINING COMPANY, Respondent; L. DEPEE et al., Appellants.

**Kansas City Court of Appeals, February 2 and December 7, 1903.**

1. **MARSHALLING ASSETS: Mining Corporation: Laborers' Wages: Preference.** It would seem that the preference of laborers in the cases of insolvent railroads ought to apply with equal force to incorporated mining companies operating lead and zinc mines.

2. **CORPORATIONS: Laborers' Wages: Statutes: Specific Liens.** Section 3167, Revised Statutes 1899, being subsequent in enactment, must be upheld as against section 1006 of the same revision; and under the former section when property of a corporation or firm is seized under judicial process or its business suspended by the action of creditors, the wages of laborers have a preference of payment over all other liens except mortgage liens.

3. ——: ——: ——: **Attachment Liens.** Although attachment liens may be established against the property of a mining company, yet when the mine is put in the hands of a receiver by subsequent attaching creditors, the wages of laborers are entitled to preference over all attaching creditors as well as others.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

REVERSED AND REMANDED (*with directions*).

*Fenn & Place* for appellants.

(1) The laborers of defendant, were preferred creditors, and ought to be first paid in full before any other creditors. R. S. 1899, sec. 3167. (2) The claim of J. R. Crow Coal Company, consisting of three judg-

ments rendered by a justice of the peace, and ordered by the court to be first paid, was manifestly error, as said judgments were void, the said justice never having obtained jurisdiction of the subject-matter of said suits by reason of defective levy of the attachments issued in said suits. The demand of R. L. Fink & Co. is subject to the same objection, the justice having no jurisdiction by reason of defective levy of attachments issued in said suit. Goodman v. Gordon, 61 Mo. App. 685; Bryant v. Duffy, 125 Mo. 18; Shanklin ex rel. v. Francis, 67 Mo. App. 457; Russell v. Major, 29 Mo. App. 167; Schell v. Leland, 45 Mo. 289; Fisher v. Davis, 27 Mo. App. 321; Haggard v. Railroad, 63 Mo. 302.

*A. W. Thurman, Cole & Burnett,* and *J. H. Spurgeon* for respondents.

(1) The claims presented by L. Depee and other claimants were not preferred claims. They never were presented to the constable, sheriff or court within ten days after the seizure. R. S. 1899, sec. 3167.

SMITH, P. J.—The defendant is a mining company created under the laws of the Territory of Arizona. In April, 1901, four several judgments amounting in the aggregate to about $900 were recovered against the defendant before a justice of the peace in actions commenced by attachment. In three of them the J. R. Crow Coal Company was plaintiff and in the fourth Fink & Co. were plaintiffs. The writs were levied on the property of the defendant by the constable. While the property of defendant was in the custody of the constable under said writs and was about to be sold under the orders of the justice the above-entitled action was brought in the circuit court by attachment for a much larger amount. Shortly after the last-referred-to action was brought the court on the application of the plaintiff made an order appointing a receiver

to take possession of the property of the defendant and to manage and protect the same, etc. The receiver qualified and took possession of the property and thereafter, under the orders of the court, sold the same and made a report of his proceedings and the amount by him realized. At the final hearing the court by its decree adjusted the priorities of the various parties making claim to the fund in the hands of the receiver.

It appears that L. Depee and several other persons on June 8, 1901, each filed before the receiver a claim for labor performed as miners for the defendant within six months next preceding the seizure under the attachment writs. It further appears from the affidavits of some of the claimants that part of the labor for which they made claim was performed after the levy of the attachment writs by the constable, but since the claims were allowed without any exception being filed thereto by either the creditors or other person interested therein, any objection based on that ground is not now available; and besides this, it appears from a stipulation contained in the record that our review of the case is to be confined to the consideration of the single question of whether or not the court erred in decreeing that the attaching creditors in the actions before the justice were entitled to priority of payment over the claims for labor.

It has been ruled that wages due employees of a railway company at the time the receiver took possession of the property may be paid out of the earnings or out of the *corpus* of the property. Union Trust Co. v. Railway, 117 U. S. 434; Miltenberger v. Railway, 106 U. S. 286; Wallace v. Loomis, 97 U. S. 146; Trust Co. v. Railway, 103 N. Y. 245. It is true that in each of the cases just cited the equitable rule was applied where the labor for which the claim was made was performed in operating a railway which became insolvent and for which a receiver was subsequently appointed, but the reasons given by the courts for ordering the preference

in favor of the laborer in such a case ought to apply with equal force to a case where such labor is performed by an incorporated mining company engaged in operating a lead and zinc mine and the plant used in connection therewith. But independent of this, it is contended that the labor claims in question were entitled to preference under the express provisions of the statute.

Section 1006, Revised Statutes, provides that all debts due employees by corporations ''for wages of their labor'' performed within the three months next preceding a demand therefor shall have priority of payment from the money and assets in the hands of any receiver over every other claim not *specially secured*. This section was brought forward from the revision of 1879 where it was numbered 761. In 1889 the Legislature for the first time enacted section 4911—Revised Statutes 1889—which was continued in the present revision—1899—as section 3167. By this latter section it is provided that when the property of any corporation shall be seized upon any process of any court of this State, or when its business shall be suspended by the action of creditors or put into the hands of a trustee, the debts owing to laborers or servants for labor to an amount not exceeding one hundred dollars performed within six months next before the seizure or transfer of such property shall be preferred and first paid in full. It is thus seen in the first of the two sections just adverted to that debts due for labor are preferred over every other claim *''not secured by specific liens on the* (corporate) *property'' ''or not specially secured.''*

While these two sections are *in pari materia,* it is quite clear that they can not be reconciled; but as the latter is a subsequently enacted statute it must be upheld as against the former wherever there is a conflict between them. It was, we think, the manifest intention of the Legislature by the latter to secure to laborers and servants, to whom wages are due by any company, cor-

poration, firm or person, when property is seized under judicial process or when their business is suspended by the action of creditors, or they are put in the hands of a receiver, a preference of payment over all other liens except mortgage liens. Fitzgerald v. Meyer, 65 Mo. App. 665, was where a corporate marble company gave a mortgage on its personal property which, after default, was taken possession of by Meyer — the mortgagee—and sold. The marble company was indebted to Fitzgerald for labor performed during the six months next preceding the filing of the mortgage for record. It was contended by Fitzgerald that under section 4911—now section 3159—that he was entitled to have his claim to the amount of $100 first paid out of the proceeds of the sale of the mortgaged property in the hands of the mortgagee Meyer. This contention was denied by us on the ground that the preference secured by the provisions of that section did not go so far as to divest partially or wholly the lien of the mortgage. It was, however, held that such preference did extend to liens acquired on property by seizure under judicial process.

The question here is whether the claims for labor are entitled to preference over liens acquired by seizure of the common debtor's property under judicial process, and therefore it becomes unnecessary to further notice the construction placed on section 3167 in Fitzgerald v. Meyer. It seems to us that we may concede the attachment liens on the property of the defendant in the hands of the receiver were valid in every respect, and yet hold the labor claims of Depee and the others were entitled to a preference in the order of payment over all the other creditors, including the attaching creditors, or, in other words, they—the labor claims—were entitled to be first paid in full out of the fund in the hands of the receiver.

It results that the decree of the circuit court in so far as it ordered the claims of the J. R. Crow Coal

Company and the other attaching creditors to be paid by the receiver before that of Depee and the others for labor performed was erroneous. And it will accordingly be reversed and cause remanded with directions to that court to enter a decree directing that the receiver pay said claims in the following order: (1) The receiver's costs and expenses; (2) The court costs in this action; (3) The nine labor claims of Depee and the others; (4) The three judgments of the justice in the attachment suits of the J. R. Crow Coal Company against defendant and that of R. L. Fink & Co. against defendant, and the other creditors in the same order as was directed in its decree. All concur.