MARY P. WOODBURY, Appellant, v. THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, a Corporation, and KANSAS CITY TITLE & TRÚST COMPANY, a Corporation.—No. 38163.—166 S. W. (2d) 552.

Division One, November 10, 1942.

Rehearing Denied, December 1, 1942.

Motion to Transfer to Banc Overruled, December 15, 1942.

528

*Sam Feller* and *C. W. Prince* for appellant.

*Adams, Adams & Adams* for respondents, Kansas City Title & Trust Company, Trustee, and The Connecticut Mutual Life Insurance Company.

CLARK, J.—This is an appeal by plaintiff from a decree of the circuit court on November 27, 1941, refusing to cancel and

set aside a deed of trust on real estate, in which the petition alleged that the deed of trust was void ab initio. Under our decisions jurisdiction of the appeal is in this court on the ground that title to real estate is involved. [Phillips v. Phoenix Trust Co., 332 Mo. 327, 58 S. W. (2d) 318, and cases cited in Peters v. Kirkwood Federal Savings & Loan Ass'n., 344 Mo. 1067, 130 S. W. (2d) 507.]

On and prior to August, 1926, one Boylan was the owner in fee simple of the real estate described in the petition, subject to two deeds of trust. The notes secured by these deeds of trust were purchased by one Charles P. Woodbury who later procured the record title by foreclosure, the trustee's deed to him being recorded in October, 1928. In February, 1930, Woodbury and his wife executed notes in the aggregate sum of $5,000.00 to one Herbert V. Jones and secured the same by a deed of trust on the real estate. A few days thereafter Jones endorsed the notes without recourse and delivered them to the defendant Insurance Company. At the time of the execution of these notes and deed of trust a two apartment building was located on the real estate, one apartment being occupied by a Mr. Stratton and the other by a Miss Thompson, each as a tenant of Woodbury. Charles P. Woodbury died before the institution of this suit.

The petition, among other things, alleged that Charles P. Woodbury, in acquiring and improving the real estate, used funds belonging to the estate of his deceased uncle, Rufus P. Woodbury, of which estate he was the executor; that Charles P. Woodbury took the title to said real estate in his own name personally, but in truth and in fact it belonged to said estate and, as plaintiff is the sole beneficiary under the residuary clause of the will of said Rufus P. Woodbury, said real estate now belongs to plaintiff; that, in making the $5,000.00 loan to Charles P. Woodbury, Herbert V. Jones was in fact the agent of the defendant insurance company and the insurance company, its agents and servants "had knowledge of the fact that said Charles P. Woodbury was not the owner of the property described in the deed of trust, but that said property was in fact a part of the estate of said Rufus P. Woodbury, deceased, and if said defendant did not actually know that said Charles P. Woodbury was not the owner of said property it did have knowledge of sufficient facts and circumstances to put it upon inquiry, which if pursued would have led to the discovery of such fact."

The answer of defendant insurance company denied the above allegations of the petition; alleged that it is an innocent purchaser for value before maturity of the notes secured by the deed of trust; that the final settlement of Charles P. Woodbury as executor of Rufus P. Woodbury was approved by the probate court on November 4, 1929, and this proceeding is a collateral attack on the judgment of the probate court approving said final settlement, but, if

it be regarded as a direct attack, it is barred by the statute of limitations.

Plaintiff offered proof tending to substantiate her allegation that Charles P. Woodbury used money belonging to his uncle's estate in acquiring the real estate, taking and recording the title in his own name. In 1930, Woodbury made application to Herbert V. Jones & Company for the $5,000.00 loan, agreeing to pay $125.00 commission. Jones submitted the application to the defendant insurance company and, upon its approval, gave his check to Woodbury, deducting the commission and expenses. The notes were made payable to the order of Herbert V. Jones and he was named as the payee in the deed of trust. A few days later the insurance company reimbursed Jones for the full amount of the loan with accrued interest and he endorsed the notes without recourse and delivered them to the insurance company.

Appellant, over the objection of respondent, introduced testimony by Stratton, one of the tenants of Charles P. Woodbury, that at some unspecified date Woodbury told him that he had used the estate's money to acquire the notes and deed of trust under which he foreclosed and acquired the real estate.

The chancellor rendered a decree in favor of the defendant insurance company and a money judgment against the administrator of Charles P. Woodbury. The administrator has not appealed.

Appellant contends that the proof shows that Jones was merely an agent for the defendant insurance company in making the loan to Woodbury; that the loan was in fact made by the insurance company and it is the actual payee and not the purchaser of the notes and cannot be considered a holder in due course under the Negotiable Instruments Act. Assuming, but not deciding, that this contention is correct, it was still necessary for appellant to prove, as alleged in her petition, that defendant had actual knowledge that Charles P. Woodbury was not the actual owner of the real estate or knowledge of sufficient facts and circumstances to put it upon inquiry, which if pursued would have led to the discovery of such fact.

The record title to the real estate was in Woodbury and there was no proof that either Herbert V. Jones or the defendant insurance company had actual knowledge of any defect in Woodbury's title.

Appellant says that it was the duty of defendant insurance company, before accepting the property as security for its loan, to make reasonable inquiry of the persons in actual possession and is charged with such knowledge as would have been gained by such inquiry. The argument being that if inquiry had been made of Stratton, who occupied the second floor of the property as the tenant of Woodbury, the defendant would have learned that Woodbury had acquired the property with money belonging to the estate. In support of this contention appellant cites: Langford v. Welton (Mo.), 48

S. W. (2d) 860 (2, 3, 4) 863; Titus v. North Kansas City Dev. Co., 264 Mo. 229, 174 S. W. 432; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 S. Ct. 239; Jones v. Nichols, 280 Mo. 653, 216 S. W. 965, 966; McBride Realty Co. v. Grace, 223 Mo. App. 588, 15 S. W. (2d) 957, (8, 9) 960; Bowman v. Anderson (Iowa), 47 N. W. 1087; McWhorter v. Oliver (Tex.), 2 S. W. (2d) 281, 284; Patterson v. Booth et al., 103 Mo. App. 402, 15 S. W. 543.

In every one of those cases, except Patterson v. Booth, the person in actual possession of the real estate held possession adversely to the holder of the record title who attempted to sell or encumber the property. In Patterson v. Booth the question was not as to knowledge which might be gained from the person in possession, but constructive knowledge to be derived from recitals in recorded instruments.

It is the settled law that a purchaser may not altogether rely upon the record title if he has knowledge of facts casting doubt on that title, and, if there are circumstances indicating that possession is held adversely to the record title, the purchaser is put upon inquiry. But appellant has cited no Missouri case, and we have found none, holding that a purchaser is under the duty of searching for defects in the landlord's title by making inquiry of those who are in possession as tenants of the holder of the record title. Possession of the tenant is that of his landlord. Here the property was in the actual possession of the tenants of Woodbury and that fact was known to both Herbert V. Jones and the defendant insurance company. It happens that there were only two tenants, but suppose the property had contained many apartments. Would the defendant have been required to inquire of all the tenants?

In this state we have a rather complete statutory system for recording instruments affecting title to real estate. [Sections 3426, 7, 8, R. S. Mo. 1939; Mo. R. S. A., pp. 899, 912.] These sections provide that such duly recorded instruments impart notice of the contents thereof to all persons dealing with the real estate. Section 3428 provides that no such instrument shall be valid except between the parties, and such as have actual notice thereof, unless recorded. True, the purchaser is bound not only by those defects in the record title of which he has actual *knowledge*, but also by those of which he has actual *notice*. Of course, if a purchaser has knowledge from any source which should reasonably put him on inquiry, he should be charged with such knowledge as he would naturally gain by making such inquiry. Where the surrounding facts and circumstances indicate that the person in possession holds otherwise than through the record owner, we have uniformly held that the purchaser from the record owner is charged with such knowledge as he can obtain by reasonable inquiry from the possessor. Also, if the rights of the tenant himself are involved, it is incumbent on the purchaser to inspect the lease, if in writing, or to make inquiry of both the land-

lord and the tenant if the lease is verbal. But possession, in and of itself, is notice of only such facts as inquiry of the occupant would naturally disclose, such as the name of the lessor, if possession is held by a tenant, and the terms of the lease. In this case no rights of the tenant are involved. The defendant insurance company knew that Stratton was in possession of a part of the premises as the tenant of Woodbury, and the evidence discloses no reason why defendant should expect to learn more than that by inquiry from Stratton. There was nothing to indicate that defendant should naturally expect to learn from Stratton that his landlord, Woodbury, had made an admission against his own title.

This exact question was decided by the Supreme Court of Minnesota in the case of Wilkins v. Bevier, 43 Minn. 213, 45 N. W. 157. There Wilkins sued to enjoin Bevier from selling land under an execution issued on a judgment against one Austin who held the record title at the time the judgment was docketed. Plaintiff claimed through a deed from Austin which he neglected to record until after defendant's judgment was docketed. A part of the land was occupied by a building owned by one Buchanan who held that part of the land under an unrecorded lease from Austin. Plaintiff provided that, prior to the docketing of defendant's judgment, he had notified the tenant, Buchanan, of his succession to the rights of Austin by deed. The opinion states:

"Now, with this condition of affairs, was Buchanan's possession notice to the judgment creditor of the title now asserted by the appellant? Admitting it to have been the creditor's duty to have followed up the suggestion which the occupancy of the premises by a third party implied, to have investigated Buchanan's claims, and that he must be presumed to know all the facts which inquiry would have developed, all that he might have learned had he interrogated Buchanan, what knowledge would he have acquired, in the natural course of events, and what must he be charged with as in his reach, had he attempted to obtain it? Certainly, he would have been told that Buchanan owned the building, and had leased the ground on which it stood for the year ending November 15th, following. The tenant's interest would have been defined by this answer, but the pursuit of information as to the actual title could not safely stop at this point. It would be incumbent upon the creditor to ascertain from whom he leased. To a verbal inquiry Buchanan's answer would have been, naturally and truthfully, that he leased from Austin; or, had the creditor called for the written lease, he would have learned precisely the same thing. It would seem plain that the law cannot require further or other inquiries, or hold the creditor as having knowledge, and therefore constructive notice, of facts which these inquiries might possibly, but not naturally, lead to,—such, for instance, as a disclosure that the lessor, the judgment debtor, in whose name

the title to the property appears of record, has very recently sold to another person. It would also seem plain that no more should be required of the creditor than that he inspect the lease, or by verbal inquiry obtain information as to who may have executed it, and therefore assumed to have interests in the demised █ premises; failing so to do, that he be charged with the knowledge which he would have thus obtained. It is possible that, in the course of the conversation with Buchanan in respect to his rights in the premises, he would have informed the respondent of the sale and conveyance to appellant, but the conclusion is inevitable that such would not have been the natural or ordinary result of pertinent inquiries upon the subject, and, obviously, an inspection of the lease under which the tenant occupied would not have conveyed the slightest intimation of appellant's claim.''

Possession of real property as tenants of the holder of the record title is not notice of any right other than a right to occupy as tenants. [Rehm v. Reilly, 297 Pac. 147 (Wash.) Annotated in 74 A. L. R. 350.]

Appellant in her reply brief argues that Mr. Stratton and Miss Thompson were not tenants of Charles P. Woodbury, but this argument is wholly without support in the record.

█ Under the will of his uncle, Charles P. Woodbury was named executor and given full power and discretion to invest the funds of the estate in any manner he might deem proper. The will further provided that, if he should survive appellant and another, each of whom was his elder, he would become the absolute owner of the entire estate. No doubt he felt safe in investing the trust funds in his own name, but fate decreed that he should meet an accidental death and that appellant should survive him and become the sole owner of the estate. Of course, he had no legal right to invest trust funds in his own name and appellant may recover such funds or property wherever she finds them except from an innocent purchaser for value without knowledge or notice.

We feel that the chancellor did not err in holding that respondent is an innocent holder for value without notice. [Hurley v. Taylor, 78 Mo. 238; Odle v. Odle, 73 Mo. 289; Witte v. Storm, 236 Mo. 470, 139 S. W. 384.] Therefore, it is unnecessary to discuss other points made in the briefs and the judgment is affirmed. All concur except *Hays, J.*, absent.

### OPINION ON MOTION FOR REHEARING.

CLARK, J.—Appellant's motion for rehearing attacks our opinion on the sole ground that we erroneously held that the occupants of the property were tenants of Charles P. Woodbury, and appellant concedes that, if the record contains any evidence of such tenancy, the motion for rehearing is without merit.

The undisputed evidence shows that the record title was in Charles P. Woodbury; that he made written application for the loan in his own name and, with his wife joining, executed the deed of trust on the property to secure the loan.

Two tenants occupied the property. Mr. Stratton rented the upstairs portion and Miss Thompson rented the lower portion. Stratton testified that he verbally rented from Charles P. Woodbury, with the understanding that witness could later buy the property if he so desired. Witness also said that, at some time not stated, Woodbury told him that the property had been acquired with funds of his uncle's estate, but he (Woodbury) controlled the title and could make a good title if witness decided to buy. Later, this witness testified that what Woodbury told him was that he had purchased a second mortgage on the property with funds of the estate, "and that he had foreclosed the second which he bought and acquired the title." That he could not recall definitely that he (Woodbury) said he personally acquired it in his name, but he did say he controlled the title.

The other tenant, Miss Thompson, testified she verbally rented a portion of the property from Stratton and paid the first few months' rent to him, after which she paid the monthly rent to Charles P. Woodbury, making the checks to him personally.

Regardless of what Woodbury may have said as to the source from which he acquired the funds to pay for the property, the evidence shows that he at all times held himself out as the owner and both Stratton and Thompson were his tenants.

The motion for rehearing is overruled. All concur except *Hays, J.*, absent.