Ernest A. OBERNAY and Wilma W. Obernay, his wife, Respondents,

v.

L. M. CHAMBERLIN, Defendant,

and

John B. Dale and Mortgage Syndicate, Inc., a corporation, Appellants.

No. 55812.

Supreme Court of Missouri, En Banc.

March 11, 1974.

Harold G. Johnson, St. Ann, for respondents.

Barksdale, Abbott, Adams & Chorlins, Jackson F. Adams, St. Louis, for defendant-appellants.

CONLEY, Special Judge.

This is an appeal from a decree granting a permanent injunction enjoining appellants from initiating foreclosure proceedings, declaring appellants' mortgage void, cancelling respondents' bond, and assessing costs against appellants.

The title to real estate being directly involved in this controversy, and this appeal pending in this court prior to January 1, 1972, the effective date of new Article V of the Constitution, we retain jurisdiction to make final disposition of the case pursuant to then Article 5, Section 3 of the Missouri Constitution.

The real estate which is the subject of this controversy is Lot 27 of Lynwood, identified as 132 St. John Avenue, Webster Groves, Missouri. This property was purchased by James W. and W. Lorraine Krewson by warranty deed dated April 9, 1954. In December of 1956, the Krewsons, upon learning that James W. Krewson was being transferred by his employer to New Jersey, "sold" this property to Mrs. Krewson's mother and father, Ernest A. Obernay and his wife, the respondents. The Obernays paid $3,500 outright and agreed to assume a mortgage of $9,000. This mortgage was paid in full by the Obernays sometime prior to January, 1965. They took possession of the property, kept the house in good repair, paid the property taxes, and held the insurance on the property in their own names. There was no warranty deed executed or other written instrument conveying title to the real estate. The tax bills as late as 1964, still listed the property in the name of James W. Krewson and W. Lorraine Krewson.

The defendant-appellant, John B. Dale, in 1964 and 1965, was Executive Vice-President of defendant-appellant, Mortgage Syndicate, Inc., and in August of 1964, Dale, acting on behalf of Mortgage Syndicate, Inc., made a loan to James W. Krewson and his wife and to a Fred Chapman and his wife, secured by a deed of trust on property not involved in this controversy. That loan was paid in accordance with its terms and was, in fact, paid in advance. No representations were made to Dale or Mortgage Syndicate, Inc., by Mr. or Mrs. Krewson in connection with that loan which proved to be untrue. A financial statement was provided at that time which showed as an asset of the Krewsons rental

property identified as 132 St. John Avenue. In January, 1965, James W. Krewson came to Dale and Mortgage Syndicate, Inc., seeking a loan for which he offered the property located at 132 St. John Avenue as security. Krewson supplied a certificate from Title Insurance Corporation, dated April 15, 1954, showing title to said property in Krewson and his wife subject to a deed of trust dated April 9, 1954, and produced a note which had been cancelled, and a deed of trust for release. Thereafter, Krewson and his wife executed a note for $8,700, secured by a deed of trust on the property in question and dated January 14, 1965, to John B. Dale, Trustee, for L. M. Chamberlin, who endorsed the note and delivered it to Mortgage Syndicate, Inc. Payments were made on this note up to January, 1966, when the note became due; and it was at that time extended for a period of one year to January 15, 1967. The payments were then made on the extended note to January 19, 1967, thereafter no further payments were made. In May of 1967, foreclosure proceedings were commenced by John Dale as Trustee.

This suit was filed May 19, 1967, and trial was held and a decree entered on May 3, 1970, permanently enjoining the defendants, and each of them, from initiating foreclosure proceedings, declaring defendant's, Mortgage Syndicate, Inc., deed of trust void, cancelling plaintiffs' bond, and assessing costs against the defendants.

Although repeated requests were made by the Obernays for a warranty deed from their son-in-law and daughter, no such warranty deed was forthcoming until October 14, 1965, when the Krewsons executed a warranty deed which was recorded on October 18, 1965, some nine months after the Krewsons had executed a deed of trust on the property.

The Obernays' daughter, who was divorced from James W. Krewson in January, 1968, identified her signature and that of her former husband on the note and deed of trust dated January 14, 1965, and testified that "she signed a lot of papers for her husband, but wasn't familiar with what she signed," and didn't know until August of 1966 that she had executed a deed of trust on this property. Mrs. Obernay testified that she and her husband had lived on the property since January, 1957, that they had carried insurance on the property, as well as making the payments on the 1954 deed of trust, and paying the taxes. She, likewise, testified that both she and her husband were employed during January, 1965, and were not present on the premises during the normal daytime hours. Mrs. Obernay also testified that although she had repeatedly requested a deed from her son-in-law and daughter, all to no avail, she had, in fact, turned over the cancelled note and deed of trust to her son-in-law and that this occurred sometime prior to January, 1965.

John B. Dale testified that in January of 1965, at the time application for the loan was made and the Certificate of Title Insurance was produced by Krewson, as well as the cancelled note and deed of trust, he had made the customary inquiry of Krewson as to what use the property was being put. He testified that Krewson informed him that the house was occupied by his wife's parents as tenants and that they were retired or semi-retired, and that they paid a nominal rental for the property. Dale testified that he made a casual inspection of the property by viewing same from the outside, but that no attempt was made to confer with the Obernays at the time of the inspection, which occurred during working hours in January, 1965.

The appellants appeal to this court contending that the trial court erred because:

1. The Obernays failed to comply with the recording statutes,

2. That the Obernays failed to prove that appellants had notice of respondents' unrecorded deed,

3. That respondents failed to prove any facts or circumstances which would

cause appellants to look beyond the record title,

4. That the trial court decree found that the appellant, Dale, was advised by Krewson that respondents were residing on the property and had done so for a number of years,

5. That the decree found that the appellants had the duty to determine what interest respondents had in the property,

6. That the decree of the trial court found the case of Woodbury v. Connecticut Mutual Life Insurance Co. et al., 350 Mo. 527, 166 S.W.2d 552 (1942) not to be in point,

7. Appellants also claim that there was further error in the respondents being guilty of laches and in respondents' delay in obtaining and recording the deed combined with delivery of the cancelled $9,000 note and deed of trust which enabled Krewson to commit fraud,

8. Finally, that in equity the appellate court will defer to the trial court's findings where there is conflicting oral testimony regarding credibility of witnesses, but that the appellate court will determine de novo and weigh competent evidence introduced upon factual issues.

From a review of the facts set forth above, there is no conflicting oral testimony involving determination of the credibility of the witnesses, but we will determine the cause de novo, weigh the competent evidence introduced upon the factual issues, and reach conclusions based upon that evidence. Rutherford v. Rutherford, 444 S. W.2d 439 (Mo.1969).

There are three common recording acts throughout the United States. These statutes may be distinguished as follows:

1. Those giving priority to the bona fide purchaser or mortgagee of realty who first records his deed, or the race type statute,

2. Those giving priority to a subsequent bona fide purchaser unless he has notice of a prior unrecorded instrument, and

3. Those protecting a subsequent bona fide purchaser unless he has actual notice of a prior unrecorded instrument.

It is the third type statute which is present in Missouri, which requires that the subsequent purchaser have no actual notice of the prior unrecorded instrument for such purchaser to take free of the prior instrument. In the instant case there is no prior unrecorded instrument, since the note and deed of trust in question were executed in January, 1965, and the warranty deed from the Krewsons to the Obernays was not executed until October, 1965, some seven months later. Here then we are not confronted with an unrecorded instrument, but in fact, no instrument at all except the verbal agreement between the Krewsons and the Obernays in 1956, that in exchange for the payment of $3,500 and assumption of an earlier mortgage that the property would be conveyed to the Obernays.

Under these facts and circumstances, we are called upon to construe the Missouri Recording Statute, Section 442.400, RSMo 1969, and to determine, as urged by appellants, whether the Obernays failed to comply with the recording statute and whether they have in fact proven that appellants had notice of the Obernays not only unrecorded deed, but their interest, if any, in the property in question, and whether under the evidence the trial court could properly find that the Obernays proved facts or circumstances which would cause the appellants to look beyond the record title.

Section 442.380, RSMo 1969, V.A.M.S., provides that instruments in writing affecting real estate shall be recorded. Section 442.400, RSMo 1969, V.A.M.S., provides for a penalty for failure to follow the directive of Section 442.380, RSMo 1969, V.A.M.S., which is that any such unrecord-

ed instrument shall not be valid, except between the parties and such as have actual notice. In determining what was intended by the language of the aforementioned statutes, Harrison et al. v. Moore et al., 199 S.W. 188 (Mo.1917), states as follows, at l.c. 189: "It should . . . be remembered that the recording act was designed . . . to carry absolute verity upon its face, except in the two instances mentioned, namely, between the parties to the deed and all others who have actual notice of . . . the unrecorded deed; so, in all other cases where the record is fair upon its face, persons who purchase real estate relying upon that fact acquire a good title against the world, and before that title can be defeated it must be shown that such purchaser was either a party to the unrecorded deed or that he had actual notice thereof, and the burden of proving those facts rests upon those who claim under the unrecorded instrument, as will be shown by the authorities to be presently considered; otherwise, the record of land titles would be of but little, if any, benefit to any one in purchasing real estate."

■ The only fact from which appellants could derive notice of someone else claiming a possessory interest in this real estate would be the inquiry by Dale of Krewson as to who occupied the property at the time this loan was made in January, 1965. The evidence discloses that Dale was told "my wife's parents live there, pay a nominal rental and are retired or semiretired." Dale further testified that he made a casual inspection of the premises from the outside. From the foregoing conversation and inspection, was a duty imposed to inquire further?

From the evidence, Dale did have knowledge of the possession of the real estate by someone other than Krewson. Under the first two types of recording statutes noted above, it is generally held as a matter of law that possession alone by a prior purchaser is sufficient notice of the possessor's interest to a subsequent purchaser, and it is immaterial whether the subsequent purchaser in fact knew of the possession. But the third type of statute, such as those of Missouri and Massachusetts, requires that the subsequent purchaser have no *actual notice* of the prior unrecorded instrument for such purchaser to take free of the prior instrument.

In Vaughn v. Tracy, 22 Mo. 415, this court stated, l.c. 420, 421–422: "We think the legislature here referred to *actual notice* as contradistinguished from implied notice, both of which were well known terms in our law when the act was passed; . . . possession is not, as the Circuit Court seemed to suppose, as a mere matter of law, *actual notice* within the meaning of our recording acts . . . . Actual notice, under the statute, is a fact, and of course may be proved by any fact; . . . The notice required by the statute is not certain knowledge, but such information as men generally act upon in the transactions of life."

On rehearing Vaughn v. Tracy, 25 Mo. 318, this court held that possession was not notice of the possessor's interest as a matter of law, but was evidence of notice of the possessor's title.

The leading Missouri case on this subject is Drey v. Doyle, 99 Mo. 459, 12 S.W. 287, wherein the court stated: "Now from the line of former adjudications of this court it is plain to be seen that the notice which will postpone a recorded instrument, affecting real estate, to a prior unrecorded one, must be actual notice. Such notice may be shown by direct evidence, or it may be inferred from facts and circumstances. The question is one of fact, and is to be determined like any other fact. Circumstances coming to the knowledge of the subsequent purchaser, which would put a prudent person upon inquiry, should go to the jury as evidence of notice. In short any evidence tending to show knowledge of the prior unrecorded instrument should be received as evidence of notice. The inference to be drawn from the facts and circumstances is one of fact and not of law. Possession and knowledge thereof

will, in ordinary cases, be good proof of notice of the title under which the party in possession claims. Such evidence, under other circumstances, will be of little value."

The Missouri cases on this subject are treated at length in an article on possession as notice, appearing in 16 Mo.L.Rev. 142 (April, 1951).

Possession in the ordinary case may be good proof of notice. This, however, is not the ordinary case. Dale had knowledge of possession by relatives who are "retired or semi-retired" and who pay only a "nominal rental." Would this put a prudent person on inquiry? This contrasted against a Certificate of Title Insurance evidencing ownership in the borrower, a cancelled note and deed of trust from a previous loan and, thereafter, a casual inspection of the premises to verify their location and general condition of same. Respondents have failed to prove facts or circumstances under their burden of proof which would put Dale as a prudent person on inquiry to look beyond the record title which was presented.

The cases cited by respondents from other jurisdictions are not determinative since, as noted, Missouri and Massachusetts are apparently the only two states which have the third type of statute requiring actual notice.

We further find the decree erroneous because the decree found that appellant, Dale, was advised by Krewson before January 14, 1965, that the respondents were residing on the property and had done so for a number of years. The evidence does not support this finding of the trial court. The only evidence on this point was the testimony of Dale that he made inquiry as to who occupied the property and the statement by Krewson, discussed above. If there had been testimony that respondents had, in fact, occupied the property for a number of years this, of itself, may have been sufficient to cause appellant, Dale, to act somewhat more carefully in determining the interest, if any, of the respondents.

In Woodbury v. Connecticut Mutual Life Ins. Co. et al., 350 Mo. 527, 166 S.W.2d 552, at 1.c. 554 (1942), it is stated: "It is the settled law that a purchaser may not altogether rely upon the record title if he has knowledge of facts casting doubt on that title, and, if there are circumstances indicating that possession is held adversely to the record title, the purchaser is put upon inquiry. But appellant has cited no Missouri case, and we have found none, holding that a purchaser is under the duty of searching for defects in the landlord's title by making inquiry of those who are in possession as tenants of the holder of the record title. Possession of the tenant is that of his landlord."

The trial court sought to distinguish the *Woodbury* case from the case at bar on the basis of the factual situation that in the *Woodbury* case the tenant would only reveal that he was a tenant and not claiming an interest adverse to the record title holder. However, the court in that opinion stated at 1.c. 555: "But possession, in and of itself, is notice of only such facts as inquiry of the occupant would naturally disclose, such as the name of the lessor, if possession is held by a tenant, and the terms of the lease . . . The defendant insurance company knew that Stratton was in possession of a part of the premises as the tenant of Woodbury, and the evidence discloses no reason why defendant should expect to learn more than that by inquiry from Stratton. There was nothing to indicate that defendant should naturally expect to learn from Stratton that his landlord, Woodbury, had made an admission against his own title."

We turn then to the final contention that respondents were, in fact, guilty of laches and were not entitled to equitable relief. As noted, a period of eight years and ten months elapsed between the "sale" by the Krewsons to the Obernays and the actual delivery of a warranty deed. Also,

as noted, the Obernays did, in fact, turn over to the Krewsons the cancelled note and deed of trust from the earlier loan. It is further noted that the decree of the trial court does not address itself to this defense. A question of laches, being a question of fact, is to be determined from all the evidence and the circumstances adduced at the trial. Schaeffer v. Moore, 262 S.W.2d 854, at 859 (Mo.1953). Here, from our review of all the evidence, we do not find that the Obernays have been guilty of laches, since it was not until the foreclosure proceedings were initiated that they became aware of the fraud practiced by their former son-in-law. They, thereafter, acted very promptly to take those steps necessary to protect their rights. It should be further noted that, while length of time is not of itself critical in determining this doctrine, it is, of course, an element. We also note parenthetically that in the instant case the "undelivered deed" was between in-laws as opposed to those who deal at arm's length.

For the reasons stated, the judgment of the circuit court is reversed and the cause remanded with directions to dissolve the permanent injunction and to reinstate appellants' mortgage.

PER CURIAM:

The Division Two Opinion by CONLEY, Special Judge, is adopted as the opinion of the Court en Banc.

DONNELLY, C. J. and MORGAN, HOLMAN, BARDGETT, and FINCH, JJ., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in dissenting opinion of HENLEY, J.

HENLEY, Presiding Judge (dissenting).

I withdraw my concurrence and respectfully dissent for the following reasons.

As noted in the principal opinion, the mortgagee " * * * did have knowledge of the possession of the real estate by some-

one other than [the record owner]." I would hold that this knowledge was sufficient to put the mortgagee on inquiry as to the nature and extent of the interest of the possessors. By reasonable inquiry, the mortgagee would have learned whether that interest was as tenants of the record owner, as represented by him, or as owners, as contended by plaintiffs. The mortgagee is chargeable with such information as such inquiry would have disclosed. If the inquiry confirmed the representation of the record owner, then this lawsuit would not have arisen. If it disclosed plaintiffs' interest, then again this lawsuit would not have arisen if mortgagee declined to make the loan until the plaintiffs and mortgagor could resolve their respective claims to the property. If, with knowledge of plaintiffs' interest, mortgagee made the loan to the record owner, its security would have been subject to the rights of plaintiffs.

I would hold that mortgagee's knowledge of possession by the plaintiffs was tantamount to actual notice of the title under which they claim, and would, therefore, affirm the judgment of the trial court.