MAX STOVALL CONSTRUCTION COMPANY, and Stovall Block and Brick Company, Plaintiffs–Appellants,

v.

VILLAGER HOMES, INC., and Larry C. Harris and Cynthia G. Harris, Defendants-Respondents.

No. 51548.

Missouri Court of Appeals, Eastern District, Division Three.

June 21, 1988.

Finch, Bradshaw, Strom & Steele, Dale E. Gerecke, Cape Girardeau, for plaintiffs-appellants.

James R. McHaney, Cape Girardeau, for defendants-respondents.

KAROHL, Presiding Judge.

The issue in this appeal involves a question of law based upon undisputed facts. The question is whether the court erred in quashing an execution sought by plaintiffs to enforce a money judgment entered on December 27, 1982, in favor of plaintiffs against Villager Homes, Inc., and permanently enjoining plaintiffs from selling or levying upon certain real estate where Villager Homes, Inc., was the record owner at the time the judgments were entered. The trial court sustained the motion to quash filed by Larry C. and Cynthia G. Harris and entered the injunction primarily because of its reading of our opinion in *Max Stovall Construction Company v. Villager Homes, Inc.*, 684 S.W.2d 562 (Mo.App.1984) [Stovall Construction Company I]. Background facts are available in that opinion which involved an effort by plaintiffs to obtain payment of part or all of their judgments by seizing moneys owed by Larry C. Harris and Cynthia G. Harris to Villager Homes, Inc., as a judgment debtor. We held the Harrises were not indebted to Villager Homes, Inc., during the garnishment period of March 17, 1983, to May 16, 1983. Accordingly, the garnishment failed because liability of a garnishee is measured by its liability to the judgment debtor, *Grimm v. Sinnett*, 567 S.W.2d 418, 421 (Mo.App.1978), and a creditor can claim no right where the debtor could not maintain an action against the garnishee. *State ex rel. Kennedy v. Harris*, 228 Mo.App. 469, 69 S.W.2d 307, 310 (1934). The subject matter in *Stovall Construction Company I* was not the same. The opinion was not decisive of the present dispute.

The present proceeding arose out of a request by judgment plaintiffs to execute and levy upon real estate. The facts relevant to this proceeding are:

1. On October 28, 1981, Villager Homes, Inc., entered into a written contract with Larry and Cynthia Harris for the sale of a residence at 2030 Andrew Street [the real estate involved].

2. On November 23, 1981, Villager Homes, Inc., entered into a lease-purchase agreement with the Harrises for the same property. That same day they executed a memorandum agreement for recording. It referred to the covenants and agreements in the lease-purchase agreement, and was signed by Villager as lessor and the Harris-

es as lessee. The lease-purchase agreement included an option for lessee to purchase the residence. It also provided for the use of an escrow agent to handle the payments and to hold a signed General Warranty Deed from Villager Homes to the Harrises. It was recorded on November 24, 1981.

3. On December 27, 1982, plaintiffs obtained two judgments against Villager Homes, Inc., in total amount of $7,568.97.

The judgments were entered in the Circuit Court of Cape Girardeau County. The real estate in question lies in Cape Girardeau County.

4. On the authority of Section 511.350 RSMo 1978, the judgments were secured by statutory liens. The duration of the liens began on the date of judgment and continued for three years. Section 511.360 RSMo 1978. *See also*, Sections 511.350, 511.360 RSMo 1986.

5. On March 31, 1983, the escrow agent of Villager Homes, Inc. and the Harrises, delivered to the Harrises a general warranty deed formerly executed by Villager Homes, Inc., on November 23, 1981. The Harrises recorded the deed.

6. On February 14, 1985, plaintiffs requested a general execution and levy on the real estate. In connection with the execution, plaintiffs requested the Sheriff of Cape Girardeau County to: (a) arrange advertisement for a Sheriff's Real Estate Under Execution Sale; and, (b) to serve a copy of the writ of execution, notice of levy on real estate, and advertisement for sale upon Larry C. Harris and Cynthia G. Harris.

7. On March 4, 1985, the mandate to enforce our opinion in *Max Stovall Construction Co. v. Villager Homes, Inc.*, was filed in the office of the Circuit Clerk of Cape Girardeau County.

8. On March 14, 1985, and April 12, 1985, the Harrises filed motion to quash the execution and a petition for an injunction to prevent plaintiffs from proceeding with the execution sale or subsequent sale.

Villager Homes, Inc., did not participate before the trial court and has not appeared before this court in this appeal. Villager Homes, Inc., is related to the litigation as judgment debtor, record owner and grantor of the real estate targeted for execution. Ordinarily, the only parties interested in an execution on real estate would be the judgment creditor and the judgment debtor as an owner of an interest in real estate. This is true because the only interest subject to execution is the interest owned by the judgment debtor. A garnishment in aid of execution involves these parties and the garnishee. The Harrises filed the motion to quash and the petition for injunction "as garnishees." Technically, they are not garnishees in the present proceeding. They became record owners of a fee interest in the real estate after the judgments, but their interest may be subject to any liens to the extent that the lien had value. No one has questioned their standing to file a motion to quash or to request injunctive relief. We assume that the case was tried with Harris and wife as intervenors. However, the issue in an execution proceeding is ownership by the judgment debtor of an interest, without regard to a determination of priorities. The purchaser at an execution sale purchases only that interest, if any, which the judgment debtor owned even if the interest is of little or no value.

In the present case there is no dispute that at the time plaintiffs' judgments were entered Villager Homes, Inc., was the fee simple owner of real estate subject to: (1) a first deed of trust in favor of Colonial Federal Savings and Loan Association, and, (2) the lease-purchase agreement. The judgment liens are junior liens to both secured positions. Villager Homes, Inc., also had a reversion under the provisions of the lease agreement which no longer applies because the Harrises exercised their option to purchase and they fully paid the agreed consideration for a general warranty deed. We found in *Stovall Construction Co., I,* that *during the period of the garnishment* the Harrises had fully paid Villager Homes, Inc., and were not indebted to them in any amount. This finding and the holding in the first appeal did not decide that Villager Homes, Inc., had no interest in the

real estate either at the time of the judgments or thereafter.

The Harrises paid Villager Homes, Inc., $11,639.96 on November 23, 1981. The lease required rent payments payable to an escrow agent of $608.94 per month for twelve months and, thereafter, $486.65 per month for the remaining twenty-four months of the lease. However, if the Harrises paid the first twelve monthly payments, which they did, then no other sums were due lessor. It is likely that the $486.65 payments were equal to the monthly obligation to Colonial Federal. The escrow agent would receive the payments and forward a like amount to Colonial Federal. The Harrises were granted an option to purchase the property by paying the balance due from Villager Homes, Inc., to Colonial Federal on its note secured by a first deed of trust. They could do so at any time after lessor was paid. Although the Harrises had not exercised their option to purchase prior to plaintiffs' judgments in December 1982, they did so by March 31, 1983. On April 4, 1983, the Harrises paid Colonial Federal Savings and Loan $49,-599.03 which liquidated the obligation of Villager Homes, Inc.

The net effect of these facts is that on and after November 23, 1982, and prior to plaintiffs' judgments and judgment liens, Villager Homes, Inc., was the record owner of the fee simple title. However, its real interest was only a reversionary interest at the end of the lease if the Harrises failed to exercise an option to purchase and pay the secured obligation of Villager Homes, Inc., due Colonial Federal Savings and Loan Association. The execution and levy on the real estate was requested on February 14, 1985. At that time the judgment debtor had no interest in the real estate, because the Harrises obtained and recorded a warranty deed, dated and executed on November 23, 1982, in April 1983.

Based upon these facts plaintiffs claim the trial court erred in quashing the execution and enjoining plaintiffs from selling or levying upon the real estate. Plaintiffs assert that "the respondents [Harrises] possessed a mere leasehold interest in the property as the option to purchase the property was unexercised [on the date of the judgments] and no warranty deed had been delivered to the respondents conveying the said real property." Plaintiffs contend: a judgment lien attaches to real property on the date of judgment; any conveyance by the judgment debtor after the judgment lien attaches is subject to the judgment; and, any sale under an execution is superior to the purchaser's title. *See, Wood v. Wood,* 133 S.W.2d 395, 396 (Mo.1939). A judgment lien applies to any after-acquired interest by reason of a sale after the judgment. Plaintiffs acknowledged that the Harrises had a right to exercise an option to purchase and that right was obtained before the judgments. However, they argue that neither the leasehold nor the option to purchase granted the Harrises an ownership interest or title in the property. Accordingly, they contend that exercise of the option occurred after the judgments, and therefore the transfer in April, 1983 was subject to the judgment liens.

The Harrises respond that the court did not err in quashing the execution on their real estate because "Villager Homes had no interest in the 2030 Andrew Street property at the time of entry of judgments." The Harrises also contend that on the date of the judgments they possessed a term for years, had an option to purchase the property and were in possession of the property. They claim further that because a short form of the lease agreement had been recorded prior to the judgments Villager possessed only reversionary rights in the real estate which were extinguished when the option was exercised, and a warranty deed delivered and recorded. Therefore, "on February 22, 1985, the date the writ of execution was issued, Villager Homes no longer had any interest [in the real estate] and therefore, the execution was a nullity."

We found in the first appeal that on the date of the judgments, December 27, 1982, Villager Homes, Inc., had been paid all sums to which it was entitled under the lease-purchase agreement. Villager Homes, Inc., did have a record fee interest

in the property subject to the first deed of trust, the leasehold interest of the Harrises, the option to purchase granted the Harrises and a possible reversion. Accordingly, judgment liens did attach to the interest. However, the general rule that judgment liens are superior to the interests of a *subsequent* grantee does not require a finding that such liens are superior to a subsequent grantee whose right to a warranty deed was publicly noticed before entry of judgment and where those rights were memorialized in a recorded lease-purchase agreement. This is particularly true where the grantor has been fully paid for its interest in the property before the date of judgment. Plaintiffs were on notice of the existing rights of Harris and wife because of the recorded memorandum of the lease-purchase agreement and actual notice of possession on the part of the tenant. Neither the provisions of the lease-purchase agreement nor its priority is in dispute. The Harrises rely on the priority of their interest in the real estate and not upon the invalidity of subsequent judgment liens.

We have said that a lease is a conveyance of an estate in land. *C & J Delivery, Inc., v. Vinyard & Lee & Partners, Inc.*, 647 S.W.2d 564, 567 (Mo.App.1983), quoted from 6 Williston on Contracts, pp. 585–589 sec. 890 on this proposition and said, "this is partly because a lease is regarded primarily as a conveyance by the common law, partly because the law governing leases has been dealt with in connection with the law of real estate, and became settled before the law of mutually dependent promises was established, and partly no doubt because leases have ordinarily been elaborately written documents in which the parties might be supposed to have expressed their intent with considerable fullness, covenants and leases have been mutually independent unless in terms expressly conditional." We also recognized that a lease is both a conveyance and a contract in *Kamada v. RX Group Limited*, 639 S.W.2d 146, 148 (Mo.App.1982). In measuring the priority between the lease-option agreement and the judgment liens we note that such agreements are "construed as a whole in order to ascertain and give effect to their [the parties] intention *at the time it was made.*" *Wilson v. Edwards*, 560 S.W.2d 608, 612 (Mo.App.1978) [our emphasis].

■ The lease-purchase agreement in the present case was recorded before the judgments. The provisions of the recorded agreement were entitled to a priority over the judgment liens. The option and the escrowed deed were part of the agreement. In order to fully enforce the intention of the parties at the time the lease-purchase agreement was made, the leasehold interest, with option, must be considered as of the date of the agreement. Restated, in order to grant the full meaning of the lease and option to purchase, which was a matter of record before the judgment liens attached, the judgment liens are junior to the lease-purchase agreement. In this respect it is significant that Villager Homes, Inc., executed a general warranty deed and delivered it to an escrow agent in November 1981, more than one year before the judgments. This fact was available on inquiry to anyone, including a judgment creditor, and binding on plaintiffs. *See, Woodbury v. Connecticut Mutual Life Insurance Co.*, 350 Mo. 527, 166 S.W.2d 552, 555 (1942).

■ In addition to arguing the lease-purchase agreement, interpreted and given effect on the date of execution, the Harrises argue that it is the date of execution, not the date of the judgment liens, which should control.

This court previously considered the relative rights of a grantee who recorded a deed after a judgment against grantor and a judgment creditor. The trial court had enjoined the judgment creditor from executing on real estate owned by the judgment debtor at the time of judgment where, however, an escrow agent for grantee was in possession of an unrecorded deed. In *State, etc., v. Composition Roofers Local No. 2*, 607 S.W.2d 742 (Mo.App.1980), the deed was recorded after the judgment, but before the request for execution. The trial court enjoined the judgment creditor and the sheriff from conducting an execution sale. We affirmed on the authority of

*Davis v. Owenby,* 14 Mo. 170 (1851). Specifically, we rejected the judgment creditor's right to contest the validity of the unrecorded deed under Section 442.400, RSMo 1978. That section provides an unrecorded deed is not valid except between the parties, and others who have actual knowledge thereof. But *Davis* held this section was for the benefit of an "interested" party. It defined an interested party to be one who claims an interest in title for value under the same grantor. A judgment creditor is not such a person.

In *Davis,* Mrs. Bartch executed a general warranty deed in favor of the State of Missouri on March 16, 1978. The deed was delivered to an escrow agent who was empowered to receive proceeds of a sale in order to pay off six open deeds of trust. Composition Roofers Local No. 2 obtained judgment against Bartch on September 29, 1978. The warranty deed was recorded on October 12, 1978. The request for execution was made after the deed was recorded. The court observed that Composition Roofers had no interest in the property by reason of its judgment lien. The first person to acquire such "interest" would have been the purchaser under the sale, "[h]owever, because the state recorded its deed before the proposed date of execution sale, such purchaser would have purchased with notice of the state's prior deed. Section 442.-390, RSMo 1978, *Rehm v. Alber,* 272 Mo. 452, 199 S.W. 170, 173 (1917). In such a situation, to prevent the unnecessary casting of a cloud on the state's title, the trial court properly used an injunction to restrain the execution sale. *Parks v. People's Bank,* 97 Mo. 130, 11 S.W. 41, (1889)." *State, etc. v. Composition Roofers Local No. 2,* 607 S.W.2d at 745.

We affirm because: (1) the judgment liens were junior to the lease-purchase agreement, the terms of which were binding on anyone claiming a subsequent interest, *see, Woodbury v. Connecticut Mutual Life Insurance Co.,* 350 Mo. 527, 166 S.W. 2d 552, 555 (1942); and (2) at the time the deed was recorded plaintiffs had no interest in the real estate and at the time of execution the judgment debtor had no interest in the real estate. *State, etc., v.*

*Composition Roofers Local No. 2,* 607 S.W.2d 742 (Mo.App.1980).

SMITH and KELLY, JJ., concur.